No. 25-6080

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

PADRES UNIDOS DE TULSA, *et al.*,

Plaintiffs – Appellees,

v.

GENTNER DRUMMOND, *et al.*,

Defendants – Appellants.

On Appeal from the United States District Court
For the Western District of Oklahoma
The Hon. Bernard M. Jones, No. 5:24-cv-511-J

BRIEF FOR *AMICUS CURIAE* FEDERATION FOR AMERICAN
IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-
APPELLANTS AND FOR REVERSAL

MATT A. CRAPO
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
(202) 328-7004
mcrapo@irli.org

Attorney for *Amicus Curiae*
Federation for American Immigration Reform

## STATEMENT OF INTERESTED PERSONS

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Federation for American Immigration Reform.

DATED: September 5, 2025                Respectfully submitted,

                                                                       /s/ Matt Crapo

# TABLE OF CONTENTS

**<u>Page</u>**

STATEMENT OF INTERESTED PERSONS

TABLE OF AUTHORITIES ...................................................................... ii

INTEREST OF *AMICUS CURIAE* ...........................................................1

INTRODUCTION ....................................................................................2

ARGUMENT ..........................................................................................4

I.    States retain the authority to regulate immigration under the Constitution subject only to Congress's authority to preempt such regulation ...................4

II.   Congress has not preempted State laws criminalizing illegal entry or reentry and has explicitly recognized that aliens may stipulate to their removal during a criminal trial under State law ...........................................................6

CONCLUSION .....................................................................................11

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## CASES

*Arizona v. United States*,
    567 U.S. 387 (2012)........................................................................4, 5

*DeCanas v. Bica*,
    424 U.S. 351 (1976).........................................................................10

*Kansas v. Garcia*,
    589 U.S. 191 (2020).........................................................................10

*Mayor of New York v. Miln*,
    36 U.S. 102 (1837)............................................................................4

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018)..........................................................................4

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892)..........................................................................4

*United States v. Oklahoma*,
    739 F. Supp. 3d 985 (W.D. Okla. 2024).....................................3, 7, 9

*United States v. Texas*,
    97 F.4th 268 (5th Cir. 2024) ............................................................9

*United States v. Texas*,
    144 F.4th 632 (5th Cir. 2025) ..........................................................9

*United States v. Texas*,
    per curiam order, No. 24-50149 (5th Cir. Aug. 29, 2025) ..................9

## <u>**STATUTES**</u>

8 U.S.C. § 1101(a)(15).................................................................................5

8 U.S.C. § 1153 ..........................................................................................5

8 U.S.C. § 1182 ...........................................................................................5

8 U.S.C. § 1227 ...........................................................................................5

8 U.S.C. § 1325 ........................................................................................3, 5

8 U.S.C. § 1325(a) .......................................................................................6

8 U.S.C. § 1326 ........................................................................................3, 5

8 U.S.C. § 1326(a)(1) ...................................................................................7

8 U.S.C. § 1326(a)(2) ...............................................................................7, 8

8 U.S.C. § 1326(b) ...............................................................................7, 8, 9

House Bill 4156 (codified at Okla. Stat. tit. 21, § 1795)........................2, 3, 6, 7, 8

## **MISCELLANEOUS**

Declaration of Independence .......................................................................4

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. In short, FAIR seeks to protect all Americans against the substantial harms of mass migration by attaining strongly-enforced, patriotic immigration reform. To that end, FAIR has been involved in more 100 legal cases since 1980, either as a party or as *amicus curiae*, in which it has consistently defended American interests against illegal immigration into the United States.

The decision in this case will likely have a substantial impact on the tools available to dealing efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR has direct and vital interests in defending the various States' authority to address the current illegal alien crisis within the confines of federal law.

---

[1] All parties have consented to the filing of this *amicus* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

## INTRODUCTION

Oklahoma and other States have taken measures to combat unlawful immigration in response to the federal government's abdication of its duty to protect States from invasion and to take care that the nation's immigration laws are faithfully executed. Since January 20, 2021, the Biden-Harris administration purposely facilitated mass illegal entries into this country. It temporarily paused all removals, gutted immigration enforcement guidelines, terminated the Migrant Protection Protocols (colloquially known as the "Remain in Mexico policy"), halted border wall construction projects, reinstated "catch and release" at the border, weakened asylum requirements, and adopted mass parole programs. The prior administration's abdication of its statutory duty to secure the border and its constitutional obligation to protect the States from invasion has resulted in an population of over 18 million illegal aliens in the United States, an estimate that increased by more than 4 million since December 2020. *See New FAIR Study Finds Illegal Alien Population Hits Record 18.6 Million*, available at: https://www.fairus.org/news/misc/new-fair-study-finds-illegal-alien-population-hits-record-18-6-million (last visited Sept. 2, 2025).

In the absence of any meaningful federal enforcement action during the prior administration, the Oklahoma legislature passed and the Governor signed House Bill 4156 ("HB 4156"), which mirrors the federal crimes of illegal entry and

reentry. *Compare* 8 U.S.C. §§ 1325 & 1326 *with* HB 4156 § 2(C)-(D) (codified at OKLA. STAT. tit. 21 § 1795(C)-(D)); *see also United States v. Oklahoma*, 739 F. Supp. 3d 985, 998 (W.D. Okla. 2024) ("Effectively, H.B. 4156 criminalizes conduct already proscribed under federal law."); J.A. 306-07 (relying on prior decisions). An alien convicted of violating either provision must "leave the state within seventy-two (72) hours following his or her conviction or release from custody, whichever comes later." HB 4156 § 2(C)(1), (2) & (D).

Although HB 4156 parallels the federal criminal offenses for illegal entry and reentry and does not interfere with Congress's power to decide which classes of aliens are admissible or removable, the district court preliminarily enjoined the enforcement of HB 4156 because the court determined that HB 4156 is preempted by federal law. J.A. 306-10. But there is nothing in federal law that suggests that Congress sought to preempt State laws from criminalizing illegal reentry. Instead, Congress explicitly recognized that aliens may stipulate to removal during (or not during) a criminal trial under *State* law. This recognition demonstrates that Congress did not intend to preempt State laws under which aliens may be punished for violating federal immigration standards; indeed, Congress gave effect to such laws. Because the district court erred in concluding that HB 4156 is likely preempted by federal law, the Court should reverse the district court and vacate the preliminary injunction.

## ARGUMENT

I.  **States retain the authority to regulate immigration under the Constitution subject only to Congress's authority to preempt such regulation.**

"When the original States declared their independence, they claimed the powers inherent in sovereignty—in the words of the Declaration of Independence, the authority 'to do all . . . Acts and Things which Independent States may of right do.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (quoting Declaration of Independence ¶ 32). Inherent in the sovereignty of an independent State, "and essential to self-preservation," is the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). "As a sovereign, [Oklahoma] has the inherent power to exclude persons from its territory, subject only to those limitations expressed in the Constitution or constitutionally imposed by Congress." *Arizona v. United States*, 567 U.S. 387, 417 (2012) (Scalia, J., concurring in part and dissenting in part); *id.* at 418 ("There is no doubt that 'before the adoption of the constitution of the United States' each State had the authority to 'prevent [itself] from being burdened by an influx of persons.'") (quoting *Mayor of New York v. Miln*, 36 U.S. 102, 132-133 (1837)).

Further, as Justice Scalia demonstrated in his opinion in *Arizona*, 567 U.S. at 420-21, the States did not surrender their power to regulate immigration upon entering the Union. *Id.* (noting that the *Miln* Court held that the power to regulate the entrance of foreigners remained with the States following the adoption of the Constitution). Because the States retained the authority to regulate immigration under the Constitution, the States' authority can only be preempted by Congress.

Congress has adopted extensive regulations governing immigration. For example, Congress has defined the classes of aliens who are admissible and removable. *See* 8 U.S.C. §§ 1101(a)(15) (defining classes of nonimmigrant aliens); 1153 (allocating immigrant visas among various classes of aliens); 1182 (defining inadmissible aliens); 1227 (defining deportable aliens). Congress has also criminalized illegal entry and reentry. *Id.* at §§ 1325, 1326. No one questions Congress's power to set nationwide immigration policy, and no State may adopt immigration policies that conflict with federal immigration law. The only question in this case is whether Congress sought to preempt State laws such as HB 4156, which mirrors the federal crimes for illegal entry and reentry under 8 U.S.C. §§ 1325, 1326. As shown below, it has not.

5

II.    **Congress has not preempted State laws criminalizing illegal entry or reentry and has explicitly recognized that aliens may stipulate to their removal during a criminal trial under State law.**

HB 4156 mirrors the federal crimes of illegal entry and reentry. HB 4156 makes it a crime for an alien to "willfully and without permission enter[] and remain[] in the State of Oklahoma without having first obtained legal authorization to enter the United States." HB 4156 § 2(B). Congress likewise criminalizes improper entry by an alien "who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact …." 8 U.S.C. § 1325(a).

HB 4156 also criminalizes the act of entering or attempting to enter Oklahoma by "[a]ny alien who has been denied admission, excluded, deported, or removed, or has departed the United States while an order of exclusion, deportation, or removal is outstanding," unless (1) "[p]rior to reembarkation of the alien at a place outside the United States or application by the alien for admission from a foreign contiguous territory, the United States Attorney General has expressly consented to such alien's reapplying for admission"; or (2) "[w]ith respect to an alien previously denied admission and removed, such alien established that he or she was not required to obtain such advance consent." HB

4156 § 2(D). Congress, with substantively similar exceptions, 8 U.S.C.
§ 1326(a)(2), also criminalizes illegal reentry of aliens who have been "denied
admission," involuntarily "removed," or have departed the country "while an order
of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a)(1).

The district court recognized that HB 4156 effectively criminalizes the same
conduct as federal law, *Oklahoma*, 739 F. Supp. 3d at 998, but nevertheless
concluded that HB 4156 is both field preempted and conflict preempted. J.A. 309;
*see also Oklahoma*, 739 F. Supp. 3d at 999, 1003.

The State Defendants ably demonstrate that HB 4156 is consistent with
federal immigration law and does not conflict with parallel federal provisions.
Opening Brief of the State of Oklahoma (Opening Br.) at 30-40. In addition to the
reasons set forth by the State Defendants, the district court's ruling should be
reversed because, contrary to the district court's conclusion that Congress "left no
room" for State regulation of entry and reentry, *Oklahoma*, 739 F. Supp. 3d at 999,
Congress explicitly recognized that States may permissibly play a role in
determining removability under the scheme enacted by Congress.

As part of its statute criminalizing illegal reentry, Congress provided for
sentence enhancements for certain classes of criminal aliens. *See* 8 U.S.C.
§ 1326(b). In that sentence enhancement provision, Congress provided: "For the
purposes of this subsection, the term 'removal' includes any agreement in which an

7

alien stipulates to removal during (or not during) a criminal trial under *either*
Federal *or State law*." 8 U.S.C. § 1326(b) (emphasis added). Although this
definition of "removal" is limited to "the purposes of this subsection," Congress
acknowledged that aliens may stipulate to their removal in State courts of law. And
instead of discouraging or seeking to prevent such practices, Congress permits
such stipulations to constitute the predicate "removal" for sentence enhancement
purposes.

HB 4156 does not involve itself with the removal of aliens convicted under
either the illegal entry or reentry provisions. HB 4156 § 2(B)-(D). Instead, it
merely requires a convicted alien "to leave the state within seventy-two (72) hours
following his or her conviction or release from custody, whichever comes later."
*Id.* § 2(C)(1)-(2), (D). This requirement to depart the State of Oklahoma under HB
4156 does not even go as far as providing for the kind of stipulated order of
removal from the United States that Congress acknowledged as permissible in
8 U.S.C. § 1326(b). If the latter is permissible, the former is, too. Congress's
recognition that aliens may stipulate to their removal "during (or not during) a
criminal trial" under "State law" shows that Congress did not intend to preempt
State involvement in making removal decisions as part of criminal prosecutions,
much less to preempt State laws merely requiring departure from the State or
criminalizing conduct that is already prohibited by federal law.

8

The foregoing is not to suggest that States may adopt their own removability standards or criminalize conduct that is permitted by federal law. No one questions Congress's authority to establish nationwide standards of removability or that States must adhere to those federal standards. In enacting 8 U.S.C. § 1326, Congress acknowledged that aliens may stipulate to their removal in State courts and did nothing to discourage or prevent such practices. Instead, Congress endorsed such practices, at least for the purposes of sentence enhancements under 8 U.S.C. § 1326(b). Congress's limited endorsement can hardly be said to reflect an intent to preempt State laws that punish illegal entry or reentry or that require departure from a State.

In concluding that HB 4156 is preempted by federal law, neither the district court nor the cases upon which the court relied addressed the fact that Congress explicitly recognized that an alien may stipulate to removal "during (or not during) a criminal trial under either Federal or State law." 8 U.S.C. § 1326(b). *See* J.A. 306-10.[2] As the State Defendants observe, only in "'rare cases' has the Supreme

---

[2] The district court relied in part upon *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024) (denying a stay the preliminary injunction pending appeal). *See* J.A. 210-11, 309; *Oklahoma*, 739 F. Supp. 3d at 997-1004. On July 3, 2025, the Fifth Circuit affirmed the preliminary injunction in that case. *United States v. Texas*, 144 F.4th 632 (5th Cir. 2025). The Fifth Circuit, however, just granted a petition for rehearing en banc and vacated its July 3, 2025, decision affirming the preliminary injunction. *United States v. Texas*, per curiam order, No. 24-50149 (5th Cir. Aug. 29, 2025).

Court held 'that Congress has legislated so comprehensively in a particular field that it left no room for supplementary state legislation.'" Opening Br. at 33 (quoting *Kansas v. Garcia*, 589 U.S. 191, 208 (2020)) (internal quotations omitted); *id.* ("Field preemption can be justified only by 'a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress.'") (quoting *DeCanas v. Bica*, 424 U.S. 351, 357 (1976), *superseded on other grounds as recognized by Kansas*, 589 U.S. at 195). Because Congress explicitly recognized that States may permissibly play a role in the removal process (at least with respect to stipulated removals), Congress clearly left room for supplementary legislation by the States, particularly that mirroring federal law, and the district court erred in concluding otherwise.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court and vacate the preliminary injunction.

DATED: September 5, 2025      Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
(202) 328-7004
mcrapo@irli.org

Attorney for *Amicus Curiae*
Federation for American Immigration Reform

## CERTIFICATE OF SERVICE

I certify that on September 5, 2025, I electronically filed the foregoing *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matt Crapo

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 29(a)(5) because, excluding those parts exempted by Fed. R. App. P. 32(f), it contains 2,287 words, as measured by Microsoft Word software, which is fewer than one-half of the 13,000 word limit for a party's principal brief under Fed. R. App. P. 32(a)(7)(B). The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

DATED: September 5, 2025          Respectfully submitted,

/s/ Matt Crapo