IN THE
# United States Court of Appeals for the Tenth Circuit

PADRES UNIDOS DE TULSA, *ET AL.*,

*Plaintiffs-Appellees*,

v.

GENTNER DRUMMOND, IN HIS OFFICIAL CAPACITY
AS OKLAHOMA GENERAL, *ET AL.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Oklahoma
5:24-cv-00511-J
(The Honorable Bernard M. Jones)

**AMICUS BRIEF OF IOWA AND 21 ADDITIONAL STATES AND
COMMONWEALTHS IN SUPPORT OF APPELLANTS**

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
*Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-8770
eric.wessan@ag.iowa.gov

September 5, 2025

*Counsel for Amici Curiae States*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..............................................................i

TABLE OF AUTHORITIES .......................................................ii

Interest OF AMICUS CURIAE................................................ 1

SUMMARY OF THE ARGUMENT ........................................ 3

ARGUMENT ........................................................................... 3

    I.    Plaintiffs Lack an Equitable Cause of Action to Challenge Oklahoma's Law. ................................... 4

    II.    Federal Immigration Law Does Not Preempt Oklahoma's Law. ........................................................ 6

        A.    Field Preemption Does Not Apply................................ 7

        B.    Oklahoma's Law Aligns with the Federal Immigration Scheme..................................... 10

CONCLUSION ...................................................................... 16

ADDITIONAL COUNSEL ..................................................... 17

CERTIFICATE OF COMPLIANCE ....................................... 18

CERTIFICATE OF SERVICE................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Arizona v. United States,*
   567 U.S. 387 (2012) ..............................................6, 8, 9, 11, 14

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) ......................................................................5

*California v. ARC Am. Corp.,*
   490 U.S. 93 (1989) ........................................................................9

*California v. Zook,*
   336 U.S. 725 (1949) ....................................................................11

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
   520 U.S. 564 (1997) ......................................................................7

*DeCanas v. Bica,*
   424 U.S. 351 (1976) ......................................................................8

*DeVillier v. Texas,*
   601 U.S. 285 (2024) ......................................................................4

*Ex Parte Young,*
   209 U.S. 123 (1908) ......................................................................5

*Gilbert v. Minnesota,*
   254 U.S. 325 (1920) ....................................................................10

*Gissendaner v. Comm'r, Ga. Dep't of Corr.,*
   779 F.3d 1275 (11th Cir. 2015) ................................................3, 4

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ......................................................................6

*Gunn v. Minton,*
   568 U.S. 251 (2013) ......................................................................4

*Kansas v. Garcia,*
   589 U.S. 191 (2020) ............................................7, 8, 9, 11, 12, 13

*Keller v. City of Fremont,*
   719 F.3d 931 (8th Cir. 2013) ....................................................15

*Moody v. NetChoice LLC,*
   603 U.S. 707 (2024) ....................................................................15

*O'Sullivan v. Boerckel,*
   526 U.S. 838 (1999) ....................................................................15

*Parker v. Brown,*
   317 U.S. 341 (1943) ................................................................6, 10

*Rice v. Santa Fe Elevator Corp.,*
  331 U.S. 218 (1947) ................................................................. 7
*State v. Giorgetti,*
  868 So. 2d 512 (Fla. 2004) ..................................................... 14
*Turtle Mountain Band of Chippewa Indians v. Howe,*
  2025 WL 1389774 (8th Cir. May 14, 2025) ........................... 4
*United States v. Texas,*
  97 F.4th 268 (5th Cir. 2024) ........................................ 9, 12, 15
*Va. Uranium, Inc. v. Warren,*
  587 U.S. 761 (2019) ............................................................... 7
*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) ......................................................... 3, 15
*Wyeth v. Levine,*
  555 U.S. 555 (2009) ............................................................... 9
*Zyla Life Scis., LLC. v. Wells Pharma of Houston, LLC,*
  134 F.4th 326 (5th Cir. 2025) ....................... 3, 10, 11, 12, 13
U.S. Const., art. VI, cl. 2 ......................................................... 6

**Statutes**

8 U.S.C. § 1326 ...................................................................... 12

**INTEREST OF AMICUS CURIAE**

Many States have enacted state crimes of illegal reentry. Those complements to federal law are no conflict or obstacle to federal immigration law. Instead, they help States support federal immigration enforcement goals. Just as many States also criminalize possession of scheduled drugs that the federal government has labeled criminal, so too do States now criminalize a limited set of immigration offenses that the federal government has already labeled criminal.

All States have an interest in preserving their sovereignty and in relying on that preserved sovereignty to enact crimes consistent with federal law. Many States have enacted their own laws that reflect and support federal immigration law enforcement—and in a case challenging a similar law in Florida, the United States weighed in to explain that there is no conflict between those laws and Florida's law. So too in Oklahoma. That is why 21 State and Commonwealth Attorneys General file this *amicus curiae* brief to ask this Court to vacate the preliminary injunction entered at the district court.

States retain immigration-related police powers. Oklahoma does not regulate admissibility, removal standards, or alien registration. So

there is no field preemption. And Oklahoma's decision to enforce its illegal reentry crime thus does not pose any obstacle to federal enforcement discretion. Oklahoma's law thus raises no constitutional or federal preemption concerns.

Ultimately, the only plausible type of preemption that could prevent Oklahoma from enforcing its law here is obstacle preemption— neither field preemption nor conflict preemption work when federal and State law are complements. Indeed, here, obstacle preemption would purport to create a conflict between State and federal enforcement discretion when there is no conflict between State and federal laws. This Court should not find that obstacle preemption preempts Oklahoma law here.

Indeed, every act punishable under these State laws is already a federal crime. And under the current administration, States and the federal government have never worked so closely together on immigration enforcement.

*Amici curiae* respectfully ask this Court to vacate the injunction enjoining enforcement of Oklahoma's duly enacted law.

## SUMMARY OF THE ARGUMENT

**I.** Plaintiffs lack a cause of action. The district court erred in failing to determine whether Plaintiffs had a cause of action allowing them to get into court on these preemption claims. They do not. Plaintiffs assert claims under equity and the Supremacy Clause, but that clause does not grant them a cause of action.

**II.** The district court abused its discretion in determining Plaintiffs were likely to succeed in their preemption claims. *See Zyla Life Scis., LLC. v. Wells Pharma of Houston, LLC*, 134 F.4th 326 (5th Cir. 2025).

Oklahoma's law does not conflict with federal law, so it is not obstacle preempted. It is a complementary enactment. This Court should decline to extend it here and should vacate the preliminary injunction.

## ARGUMENT

Pre-enforcement challenges to statutes are "disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). So Plaintiffs must satisfy the more rigorous threshold requirement that they are "likely to prevail on the merits." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015). Only after that threshold showing may a court "then proceed to weigh" other injunction

factors. *Id.* And even then, a facial pre-enforcement challenge requires showing not only that the Plaintiffs might be affected but that universal relief is warranted. Plaintiffs here can make no such showing.

## I. Plaintiffs Lack an Equitable Cause of Action to Challenge Oklahoma's Law.

Plaintiffs must have a cause of action to assert constitutional violations. Yet they fail to assert a cause of action allowing them to bring their preemption claims here—they instead plead only a cause of action under equity and the Supremacy Clause. Because Plaintiffs do not plead a viable cause of action, their claims should be dismissed.

"Federal courts are courts of limited jurisdiction possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (cleaned up). "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts;" instead they are "invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024). *Cf. Turtle Mountain Band of Chippewa Indians v. Howe*, 2025 WL 1389774, at *4 (8th Cir. May 14, 2025) ("[T]o seek redress

through § 1983, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." (quotations omitted)).

The Supremacy Clause "does not create a cause of action" nor confer federal rights; it is a "rule of decision." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–325 (2015). It does not "give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States." *Id.*

Plaintiffs ground their equitable action on *Ex parte Young*. *See* App. at 76A–77A & n.8. *Ex parte Young* allows persons "about to" be subject to state action that would violate federal law to bring injunctive actions to forestall any continued or impending violation of their rights. 209 U.S. 123, 155–156 (1908).

But Oklahoma law does not violate federal law. So Plaintiffs are not the private parties entitled to seek "injunctive relief against state officers who are violating, or planning to violate, federal law." *Armstrong*, 575 U.S. at 326–327.

Indeed, *Armstrong* does not create a free-standing equitable cause of action. *See* App. at 76A–77A & n.8. Instead, this Court should read *Armstrong* to reject the concept of a free-standing cause of action to sue

under the Supremacy Clause. Even more so when, as here, there is no conflict to provide even a questionable basis for preemption.

Plaintiffs' lack of a cause of action should now be addressed. And because Plaintiffs lack an equitable cause of action, their claims should be dismissed.

## II. Federal Immigration Law Does Not Preempt Oklahoma's Law.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012) (citing *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). "[T]he states are sovereign, save only as Congress may constitutionally subtract from their authority." *Parker v. Brown*, 317 U.S. 341, 351 (1943). The "Laws of the United States"—not the United States's discretionary enforcement decisions—take priority over conflicting state law. U.S. Const., art. VI, cl. 2.

Preemption is powerful and must be narrowly construed. *See Arizona*, 567 U.S. at 398–401. Courts scrutinize implied preemption claims because "an unexpressed purpose to nullify a State's control over its officers and agents is not lightly to be attributed to Congress." *Parker*,

317 U.S. at 351. Implied preemption "start[s] with the assumption that the historic police powers of the States were not to be superseded" unless preemption "was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

Federal enforcement priorities do not preempt state law. *See Kansas v. Garcia*, 589 U.S. 191, 212 (2020). "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019).

The injunction here drastically expands immigration preemption, enjoining Defendant's enforcement of its duly enacted law based on field and conflict preemption. The district court stretches *Arizona* too far. Those errors warrant reversal.

## A.    Field Preemption Does Not Apply.

Field preemption "is itself suspect, at least as applied in the absence of a congressional command that particular field be preempted." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616–617 (1997) (Thomas, J., dissenting). Only "[i]n rare cases" have courts found that Congress has "'legislated so comprehensively' in a particular field

that it 'left no room for supplementary legislation.'" *Kansas*, 589 U.S. at 208. "Only a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress" justifies field preemption. *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) *superseded on other grounds as recognized by Kansas*, 589 U.S. at 195.

The district court identified no clear and manifest congressional purpose, only a general "foreign relations interest in being the sole entity setting policy for the treatment of foreign nationals coming across the U.S. border and moving throughout the country." App. at 83A. To support this supposed general interest, the court extended *Arizona* to novel grounds: preempting the entire field of immigration. *See* App. at 86A; *but see DeCanas*, 424 U.S. at 354–356. But field preemption within immigration law is narrower, as this Court has shown by analyzing state immigration-related laws under conflict and obstacle preemption.

The Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *DeCanas*, 424 U.S. at 355. Alien registration is field preempted. *Arizona*, 567 U.S. at 401. And the

Supreme Court has never extended immigration field preemption farther. *See, e.g.*, *Kansas*, 589 U.S. at 210 (rejecting overbroad immigration field preemption); *Arizona*, 567 U.S. at 401, 403–413 (federal government "has occupied the field of alien registration" but analyzing other sections using obstacle preemption).

If the district court is correct, *Arizona* could have been much easier. "The Court would have simply said that immigration implicates important federal interests, so the Arizona law was field preempted in its entirety." *United States v. Texas*, 97 F.4th 268, 322 (5th Cir. 2024) (Oldham, J., dissenting). But that theory "radically undermine[s] States' sovereignty . . . because immigration is hardly the only area of state regulation that implicates important federal interests." *Id.* at 322–323 (Oldham, J., dissenting). The federal government has important interests and statutory authority in many areas where state law is not preempted. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 573–581 (2009) (drug enforcement); *California v. ARC Am. Corp.*, 490 U.S. 93, 101–102 (1989) (antitrust).

It is hard to argue that the federal government occupies a field when it does not say so itself. *Cf. Parker*, 317 U.S. at 358. There is no *conflict*, much less field preemption, here.

## B. Oklahoma's Law Aligns with the Federal Immigration Scheme.

In issuing a pre-enforcement facial preliminary injunction of Oklahoma's law, the district court incorrectly predicted that Plaintiffs would likely be able to show that Oklahoma's law conflicted with and was an obstacle to the federal government's enforcement discretion and policies. This was wrong twice over. *First*, the Laws of the United States—not the Executive's enforcement discretion—preempt state laws. *Second*, Oklahoma's law is complementary to federal law and federal enforcement discretion.

### 1. *Conflict preemption principles do not prohibit States from incorporating federal criminal law for state criminal law purposes.*

Federal law should conflict-preempt state law only when the two conflict. And State laws do not "somehow conflict with [federal] by incorporating it." *Zyla Life*, 134 F.4th at 331.

Federal law seldom bars States from adopting federal law for its purposes. *See, e.g.*, *Gilbert v. Minnesota*, 254 U.S. 325, 330–331 (1920).

"[T]here are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or state prosecutors." *Kansas*, 589 U.S. at 212. "[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests." *Id.* Overlap does not mean invalidity. *See Zyla Life*, 134 F.4th at 331–334 (citing *California v. Zook*, 336 U.S. 725, 733 (1949)).

Oklahoma can complement criminal immigration law. *See id.* at 333 ("States may have a legitimate interest in punishing or providing redress for wrongs even if federal law already does so. The Federal Government is not the only one with an interest in criminalizing murder or rape."). That is within Oklahoma's historic police powers. *See Mayor, Alderman & Commonalty of City of N.Y. v. Miln*, 36 U.S. (11 Pet.) 102, 130–132 (1837); *Arizona*, 567 U.S. at 417 (Scalia, J. concurring in part and dissenting in part) (States' "power to exclude has long been recognized as inherent in sovereignty").

*Arizona* recognized that where a State is not operating in an occupied field, "a State may make violation of federal law a crime." 567 U.S. at 402. Unlike here, the challenged criminal laws in *Arizona* were

obstacle preempted for criminalizing conduct that was not a federal crime. *Texas*, 97 F.4th at 405, 407.

Here, Congress criminalized illegal reentry with mandatory language. 8 U.S.C. § 1326 (illegal reentry violation "shall" be punished). Unlike the obstacle-preempted laws in *Arizona*, Oklahoma's law neither goes further than federal law nor criminalizes something not also federally criminal. And as in other contexts, "[t]he Federal Government has limited resources. Thus, it often welcomes state aid in enforcing shared legal norms." *Zyla Life*, 134 F.4th at 334.

And as the Fifth Circuit recognized, a discretion-based obstacle preemption analysis risks invalidating enforcement of the "many state statutes [that] incorporate federal criminal requirements." *Id.* at 334–335 (collecting statutes.); *see Kansas*, 589 U.S. at 212.

Given the expanding reach of federal criminal law, "there are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or State prosecutors." *Id.* "Our federal system would be turned upside down if we were to hold that federal criminal law preempts state law whenever they overlap," and there is no basis for inferring such preemption. *Id.* Rather, "in the vast majority of

cases where federal and state laws overlap, allowing States to prosecute is entirely consistent with federal interests." *Id.* This is particularly true when a State acts within its historic police powers. *Rice*, 331 U.S. at 230.

Another hypothetical highlights the problems with enforcement discretion as a basis for finding obstacle preemption. Both States and the federal government make it a crime for a convicted felon to own a firearm—including persons convicted of a felony in federal court. *See*, *e.g.*, Iowa Code § 724.26; Fla. Stat. §§ 790.23(a), (c); 18 U.S.C. § 922(g)(1). Enforcement-discretion obstacle preemption suggests that any State prosecution for a violation would necessarily infringe on the federal government's supposed decision to not prosecute. But that cannot be so. Nor can it be the case that the federal government not prosecuting a given individual for illegal reentry means that State enforcement of violations for identical factual elements infringes on the federal government's authority.

Finding obstacle preemption based on overlap in enforcing an area of law creates "staggering" implications. *Zyla Life*, 134 F.4th at 336. Instead, this Court should respect the parallel interests of separate

sovereigns in enforcing criminal violations under both federal and state law.

   2.    *Any purported conflicts should be resolved by state courts in as-applied challenges.*

A pre-enforcement challenge is improper where the law may be plausibly applied constitutionally and uncertainty remains about state court interpretation. This is true here for at least four reasons.

*First,* and most basically, Oklahoma courts interpreting Oklahoma law interpret Oklahoma law such that "every statute" is given "effect to the legislative intent and purpose expressed in its language." *Hodara v. Oklahoma Dep't of Corr.*, ---P.3d---, 2025 OK 47, ¶ 6. Indeed, the Oklahoma Supreme Court presumes "a statute is constitutional 'unless it is clearly, palpably, and plainly inconsistent with the Constitution.'" *Id.* (quoting *Hill v. American Medical Response*, 423 P.3d 1119, 1124 (Okla. 2018)). And if there is any plausible constitutional interpretation that Court "interpret[s] the statute to 'render it constitutional, unless constitutional infirmity is shown beyond a reasonable doubt.'" *Id.* (quoting *Lee v. Bueno*, 381 P.3d 736, 740 (Okla 2016)).

*Second*, when "[t]here is basic uncertainty about what the law means and how it will be enforced," it is improper to enjoin enforcement

"before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal immigration law and its objectives." *Arizona*, 567 U.S. at 416. Any specific preemption problems that might exist "could be solved with the scalpel of as-applied relief . . . as opposed to the machete of global invalidation." *Texas*, 97 F.4th at 300 (Oldham, J., dissenting). The district court did not give Oklahoma courts an opportunity to consider alleged constitutional defects. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

*Third*, several federal courts of appeals have followed the cautious approach as explained in *Arizona. See, e.g., Keller v. City of Fremont*, 719 F.3d 931, 945 (8th Cir. 2013) ("facial challenges are disfavored"). Facial challenges are hard to win because they "'threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *Moody v. NetChoice LLC*, 603 U.S. 707, 723 (2024) (quoting *Grange*, 552 U.S. at 451).

*Fourth*, courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Grange*, 552 U.S. at 449–450. "'Claims of facial invalidity often rest on

speculation' about the law's coverage and its future enforcement."
*NetChoice*, 603 U.S. at 723 (quoting *Grange*, 552 U.S. at 450–451). But to
succeed, there must be no constitutional application. Hypotheticals are
not enough.

Thus, allowing Oklahoma to enforce its law to the extent it is
constitutionally permissible will not impair the legislative purpose.

## CONCLUSION

For these reasons, this Court should vacate the injunction enjoining
enforcement of Oklahoma's law.

September 5, 2025                    Respectfully submitted,

                                     */s/ Eric Wessan*
                                     ERIC WESSAN
                                     *Solicitor General*

                                     Hoover State Office Building
                                     1305 East Walnut Street
                                     Des Moines, Iowa 50319
                                     (515) 823-9117
                                     (515) 281-4209 (fax)
                                     eric.wessan@ag.iowa.gov

                                     *Counsel for Amici Curiae*

# ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Stephen J. Cox
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Douglas B. Moylan
Attorney General of Guam

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Andrew T. Bailey
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North
Dakota

Dave Yost
Attorney General of Ohio

Alan Wilson
Attorney General of South
Carolina

Marty Jackley
Attorney General of South
Dakota

Jonathan Skrmetti
Attorney General of Tennessee

Ken Paxton
Attorney General of Texas

John B. McCuskey
Attorney General of West
Virginia

Keith G. Kautz
Attorney General of Wyoming

**CERTIFICATE OF COMPLIANCE**

1.    This document complies with the type-volume limits of Federal Rule of Appellate Procedure 29(b)(4) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,918 words.

2.    This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Eric H. Wessan*
Solicitor General

**CERTIFICATE OF SERVICE**

I certify that on September 5, 2025, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Eric H. Wessan*
Solicitor General
