**No. 25-6080**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

PADRES UNIDOS DE TULSA, et al.,

*Plaintiffs-Appellees,*

v.

GENTNER DRUMMOND, in his official capacity as
Attorney General of Oklahoma, et al.,

*Defendants-Appellants.*

_____

On appeal from the United States District Court
for the Western District of Oklahoma
No. 5:24-cv-511 (Jones, J.)

_____

## BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE* SUPPORTING APPELLANTS

_____

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
BENJAMIN HAYES
  *Attorneys*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

**TABLE OF CONTENTS**

<u>Page</u>

INTREST OF AMICUS CURIAE ........................................................................1

STATEMENT OF THE ISSUES.........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT............................................1

STATEMENT OF THE CASE ............................................................................3

I.      The federal prohibition on illegal entry and reentry ...............................3

II.     House Bill 4156.......................................................................................5

III.    Prior Proceedings....................................................................................7

ARGUMENT ...................................................................................................8

I.      House Bill 4156 is not preempted............................................................8

        A.     House Bill 4156 is not field preempted ........................................9

        B.     House Bill 4156 is not conflict preempted ..................................14

CONCLUSION ...............................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s)**

*Arizona v. United States,*
    567 U.S. 387 (2012) ........................................................................................10, 12, 14

*California v. Zook,*
    336 U.S. 725 (1949) ........................................................................................16

*Chamber of Com. of the U.S. v. Whiting,*
    563 U.S. 582 (2011) ........................................................................................14

*DeCanas v. Bica,*
    424 U.S. 351 (1976) ........................................................................................9

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher,*
    267 F.3d 1228 (11th Cir. 2001) ....................................................................15

*Gilbert v. Minnesota,*
    254 U.S. 325 (1920) ........................................................................................15

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ..........................................................................................10

*Kansas v. Garcia,*
    589 U.S. 191 (2020) ........................................... 2, 3, 8, 9, 12, 13, 14, 15, 18, 19

*National Pork Producers Council v. Ross,*
    598 U.S. 356 (2023)........................................................................................15

*Padres Unidos de Tulsa v. Drummond,*
    2025 WL 1444433 (W.D. Okla. May 20, 2025)............................................7

*Padres Unidos de Tulsa v. Drummond,*
    2025 WL 1573590 (W.D. Okla. June 3, 2025)...................................7, 13, 18

*Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.,*
    485 U.S. 495 (1988)........................................................................................8

*Plyler v. Doe,*
    457 U.S. 202 (1982) ........................................................................................15

*R.J. Reynolds Tobacco Co. v. Durham County,*
    479 U.S. 130 (1986) ........................................................................................2, 9

*United States v. Oklahoma*,
739 F. Supp. 3d 985 (W.D. Okla. 2024) ............................................7, 11, 13, 16, 17, 18

*United States v. Salerno*,
481 U.S. 739 (1987)...........................................................................................................14

*United States v. Texas*,
97 F.4th 268 (5th Cir. 2024) .................................................................................11, 12, 16

*United States v. Texas*,
144 F.4th 632 (5th Cir. 2025) ...................................................................................... 12

*Virginia Uranium, Inc. v. Warren*,
587 U.S. 761 (2019).................................................................................................2, 8, 13

*Washington State Grange v. Washington State Republican Party*,
552 U.S. 442 (2008)...............................................................................................3, 14, 18, 19

**U.S. Constitution:**

U.S. Const. art. VI, cl. 2................................................................................................8

**Statutes:**

8 U.S.C. § 1101(a)(3) ....................................................................................................5

8 U.S.C. § 1302 ...........................................................................................................10

8 U.S.C. § 1302(c) .......................................................................................................11

8 U.S.C. § 1303(a) ................................................................................................. 10, 11

8 U.S.C. § 1304...........................................................................................................10

8 U.S.C. § 1305...........................................................................................................10

8 U.S.C. § 1306...........................................................................................................10

8 U.S.C. § 1324(c) .......................................................................................................17

8 U.S.C. § 1325(a) ................................................................................. 1, 3, 9, 11, 16

8 U.S.C. § 1325(b).........................................................................................................3

8 U.S.C. § 1325(c)-(d) .................................................................................4

8 U.S.C. § 1326(a) ................................................... 1, 4, 6, 9, 11, 16

8 U.S.C. § 1326(a)(2) ...........................................................................4, 6

8 U.S.C. § 1326(b)(1)-(2) ........................................................................4

8 U.S.C. § 1326(b)(3)-(4) ........................................................................4

8 U.S.C. § 1326(c) .....................................................................................4

8 U.S.C. § 1357(g) ..................................................................................16

8 U.S.C. § 1357(g)(1)-(5) .......................................................................17

8 U.S.C. § 1357(g)(8) .............................................................................16

8 U.S.C. § 1357(g)(10) ...........................................................................15

Okla. Stat. § 1795 .....................................................................................5

Okla. Stat. § 1795(A) ................................................................................5

Okla. Stat. § 1795(B) ................................................................................5

Okla. Stat. § 1795(C)(1) ...........................................................................5

Okla. Stat. § 1795(C)(2) ...........................................................................5

Okla. Stat. § 1795(D) ................................................................................6

Okla. Stat. § 1795(D)(1)-(2) .....................................................................6

Okla. Stat. § 1795(E) ................................................................................6

Okla. Stat. § 1795(F) ............................................................................5, 17

Okla. Stat. § 1795(G) ................................................................................6

## INTEREST OF AMICUS CURIAE

The United States is responsible for the enforcement of the Nation's immigration laws. Accordingly, the United States has an interest in ensuring that the doctrines of preemption are applied in a manner that preserves the federal government's primacy over the areas that are within its constitutional authority, including immigration, while preserving the ability of States to adopt complementary legislation that advances the federal policy. The United States submits this amicus brief because the district court misapplied preemption doctrine to preliminarily enjoin House Bill 4156.

## STATEMENT OF THE ISSUES

1.    Whether House Bill 4156 is field preempted.

2.    Whether House Bill 4156 is facially conflict preempted.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Oklahoma enacted House Bill 4156 into law last year, seeking to do its part to redress the crisis of illegal immigration that was brought upon the United States during the prior administration. The Oklahoma law makes it a state crime for an "unauthorized alien"—a term defined in accordance with federal statute—to enter, attempt to enter, or be found in Oklahoma after having entered or reentered the United States in violation of the federal Immigration and Nationality Act's (INA) own prohibitions on illegal entry and reentry. *See* 8 U.S.C. §§ 1325(a), 1326(a). House Bill 4156 thus complements existing federal immigration law by punishing those within, or that come

within, Oklahoma's regulatory reach who previously entered or reentered the country in violation of U.S. immigration law. Although House Bill 4156 simply mirrors the federal prohibitions on illegal entry and reentry, the district court preliminarily enjoined that law in all its applications on the ground that it is preempted by the INA's entry and reentry provisions—both as a matter of field preemption and conflict preemption. That decision is wrong and should be reversed.

The Supreme Court has made clear that field preemption arises only in the "rare case[]" where "Congress [has] 'legislated so comprehensively' in a particular field that it 'left no room for supplementary state legislation.'" *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140 (1986)). The federal provisions punishing unlawful entry and reentry do not meet that high standard. Ultimately, House Bill 4156 simply imposes state-law penalties on those who have entered or reentered the United States in violation of federal law. The INA's prohibitions on unauthorized entry and reentry do not foreclose that kind of complementary state legislation and a "brooding federal interest" in the treatment of illegal aliens has no preemptive effect. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion).

House Bill 4156 also is not conflict preempted. Indeed, there is no conflict at all. Instead, the Oklahoma statute's prohibitions are materially identical to the federal entry and reentry provisions. No different from a state criminal law that borrows from a federal statute to punish the same wrongdoing, Oklahoma's statute in essence only

adds a state-level punishment for what federal law already proscribes. The court below held this supplemental punishment preempted, on the ground that it entrenched on the federal government's enforcement discretion. But the mere "possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." *Kansas*, 589 U.S. at 212. At a minimum, House Bill 4156 does not conflict with federal law "in *all* of its applications," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008), which is enough to reject the district court's conflict preemption ruling.

## STATEMENT OF THE CASE

### I.    The federal prohibition on illegal entry and reentry

The INA prohibits aliens from unlawfully entering or reentering the United States. As to unlawful entry, the INA contains a straightforward provision that creates a criminal offense applicable to

> [a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact.

8 U.S.C. § 1325(a). An initial violation of this section is punishable by a fine or imprisonment up to 6 months (or both), and a subsequent violation may result in a fine

and imprisonment for a term of "not more than 2 years." *Id.* Separate civil penalties may be imposed. *Id.* § 1325(b).[1]

The INA also prohibits unlawful reentry. Specifically, it imposes criminal liability on an alien who has "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter … enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a). A violation is punishable by a fine and "not more than 2 years" in prison (or both). *Id.* However, a violation does not occur if either:

> (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act.

*Id.* § 1326(a)(2). The INA imposes a series of escalating sentences of incarceration for violators with prior convictions for certain offenses, *id.* § 1326(b)(1)–(2), or those who were previously removed or excluded from the United States under certain authorities, *id.* § 1326(b)(3)–(4). Finally, an alien who was removed prior to the completion of a term of imprisonment and reenters the country must be "incarcerated for the remainder of the sentence of imprisonment." *Id.* § 1326(c).

---

[1] Section 1325 contains provisions unrelated to unlawful entry, which prohibit entering into a marriage or commercial enterprise to "evad[e] any provision of the immigration laws." 8 U.S.C. § 1325(c)–(d).

## II.    House Bill 4156

Governor Stitt signed House Bill 4156 into law on April 30, 2024. That law creates two new criminal offenses under Oklahoma law that mirror federal law's prohibitions on unlawful entry and reentry. *See* Okla. Stat. § 1795.

**A.** As to unlawful entry, the Oklahoma law provides that an "alien" commits an "impermissible occupation" if the alien "willfully and without permission entered and remains in the State of Oklahoma without having first obtained legal authorization to enter the United States." Okla. Stat. § 1795(B). The statute's definition of "alien" is identical to the federal definition of that term. *Compare id.* § 1795(A), *with* 8 U.S.C. § 1101(a)(3). To ensure alignment with federal law, House Bill 4156 provides an affirmative defense to prosecution if "[t]he federal government has granted the defendant: [a] lawful presence in the United States; or [b] asylum," or if "[t]he defendant was approved for benefits under the Deferred Action for Childhood Arrivals program between June 15, 2012, and July 16, 2021." Okla. Stat. § 1795(F).

A violation of the unlawful entry prohibition is a misdemeanor punishable by imprisonment up to one year or a fine up to $500 (or both). Okla. Stat. § 1795(C)(1). A second violation, or a violation in concert with another offense, is a felony punishable by up to two years of imprisonment or a $1,000 fine (or both). *Id.* § 1795(C)(2). In addition to these penalties, the Oklahoma law provides that the alien "shall be required to leave the state within seventy-two [] hours following his or her conviction or release from custody, whichever comes later." *Id.* § 1795(C)(1), (2).

**B.**  House Bill 4156 also reinforces the federal prohibition on illegal *reentry* of unauthorized aliens.  It provides that "[a]ny alien who has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter enters, attempts to enter, or is at any time found in Oklahoma" is guilty of a felony.  Okla. Stat. § 1795(D).  This language is taken nearly verbatim from the INA's prohibition on unlawful reentry. *See* 8 U.S.C. § 1326(a).  The Oklahoma law also contains the same exceptions as the INA's reentry provision:  it is not violated if "[p]rior to reembarkation of the alien at a place outside the United States or application by the alien for admission from a foreign contiguous territory, the United States Attorney General has expressly consented to such alien's reapplying for admission," or "[w]ith respect to an alien previously denied admission or removed, such alien established that he or she was not required to obtain such advance consent" under any law.  Okla. Stat. § 1795(D)(1)–(2); *cf.* 8 U.S.C. § 1326(a)(2).

Any alien convicted under either portion of the Oklahoma law "shall not be eligible for probation or delayed sentencing."  Okla. Stat. § 1795(G).  Moreover, for both the entry and reentry offenses, the "arresting law enforcement agency" is required to "collect all available identifying information" of the alien and to "cross-reference the collected information" with all federal, state, and local criminal databases or any federal "lists or classifications used to identify a person as a threat or potential threat to national security."  *Id.* § 1795(E).

6

### III.    Prior Proceedings

Private plaintiffs—two organizations and two private parties on behalf of themselves and a putative class—filed a lawsuit in federal district court, alleging that House Bill 4156 is preempted.  The United States under the prior administration also sued Oklahomo and argued that House Bill 4156 is unlawful.  The district court originally granted the United States' motion for a preliminary injunction, *see United States v. Oklahoma*, 739 F. Supp. 3d 985 (W.D. Okla. 2024) ("*Oklahoma*"), and denied the private plaintiffs' separate motion as moot.  The United States later voluntarily dismissed its lawsuit, and the court dismissed Oklahoma's appeal of the preliminary injunction as moot.

The private plaintiffs then amended their complaint and moved for a TRO/preliminary injunction and for class certification.  Docs. 59–61.  The district court granted a TRO and provisionally certified two classes under Federal Rule of Civil Procedure 23(b)(2).  *See Padres Unidos de Tulsa v. Drummond*, 2025 WL 1444433 (W.D. Okla. May 20, 2025) ("*Drummond I*").  The court then granted Plaintiffs' motion for a preliminary injunction on June 3, 2025, holding that House Bill 4156 is preempted.  *See Padres Unidos de Tulsa v. Drummond*, 2025 WL 1573590 (W.D. Okla. June 3, 2025) ("*Drummond II*").  This appeal followed.

7

## ARGUMENT

### I.    House Bill 4156 is not preempted.

The Supreme Court provides that the Constitution, federal statutes, and treaties constitute "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Its command is simple: if a state law and federal law conflict, the federal law wins. *See Kansas v. Garcia*, 589 U.S. 191, 202 (2020). Although Congress may preempt state laws by express statutory language, that intent may also be inferred. *Id.* at 203. "In all cases," however, "the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress." *Id.* at 202. "There is no federal preemption *in vacuo*," *id.* (quoting *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988)), and "[i]nvoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality opinion). Rather, "a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." *Id.*; *see also Kansas*, 589 U.S. at 208 (implied preemption "must be grounded 'in the text and structure of the statute at issue'").

All agree that the INA does not expressly preempt House Bill 4156. Rather, the district court held that Oklahoma's law is preempted under two theories of implied preemption: (1) field preemption, and (2) conflict preemption. It is wrong on both.

### A.     House Bill 4156 is not field preempted.

House Bill 4156 is not field preempted.  That theory of preemption applies only in the "rare case[]" where "Congress [has] 'legislated so comprehensively' in a particular field that it 'left no room for supplementary state legislation.'"  *Kansas*, 589 U.S. at 208 (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140 (1986)).  "Only a demonstration that complete ouster of state power[,] including state power to promulgate laws not in conflict with federal laws[,] was the clear and manifest purpose of Congress" will justify a finding of field preemption.  *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) (quotation marks omitted).

**1.**     The punishment of those who have unlawfully entered or reentered the United States is not one of those rare areas in which Congress intended to occupy the field to the exclusion of state legislation (like House Bill 4156) that supplements and reinforces federal law.  The federal prohibitions on entry and reentry are each contained in a single statutory subsection—indeed, in a single *sentence* in a single subsection.  *See* 8 U.S.C. §§ 1325(a), 1326(a).  Their prohibitions are not complex; nor are they balanced with carefully crafted exceptions.  *See id.*  Such general prohibitions are not the kind of "comprehensive[]" regulatory scheme, *Kansas*, 589 U.S. at 208 (quoting *R.J. Reynolds Tobacco Co.*, 479 U.S. at 140), sufficient to evince a "clear and manifest purpose" by Congress to effect a "complete ouster" of complementary state law, *DeCanas*, 424 U.S. at 357 (quotation marks omitted).  If they were, then virtually any federal prohibition

would give rise to field preemption, and the Supreme Court's directive that field preemption may be found only in the "rare case[]" would be an empty promise.

**2.**      The Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012), does not support field preemption here.  There, the Court applied its decades-old precedent in *Hines v. Davidowitz*, 312 U.S. 52 (1941), to an Arizona law that "add[ed] a state-law penalty" for failing to comply with the INA's registration requirement. *Arizona*, 567 U.S. at 400.  Following that longstanding precedent, the Court held that the Arizona registration scheme was field preempted.  In addition to the registration requirement itself, *see* 8 U.S.C. § 1302, the INA's registration provisions:  (1) authorize the Attorney General to "prescribe special regulations and forms" to govern the registration of fingerprinting of aliens holding certain professions, *id.* § 1303(a); (2) specify items that must be included in those forms, provide for the confidentiality of registration forms and fingerprints, impose an oath requirement, provide for the issuance of a "certificate of alien registration" for aliens successfully registered, and require that the card be carried "at all times," *id.* § 1304; (3) govern notification of a change of address, *id.* § 1305; and (4) impose penalties for the failure to comply with the registration requirements and other offenses, *id.* § 1306.  Consistent with *Hines*, the Supreme Court concluded that these multiple interlocking provisions "provide a full set of standards governing alien registration" that "occup[y] the field of alien registration," such that "even complementary state regulation is impermissible."  *Arizona*, 567 U.S. at 401.

10

The INA's alien registration provisions are far more complex and comprehensive than the simple and straightforward entry and reentry provisions. That is especially true given that multiple of the alien registration provisions specifically authorize the Attorney General to promulgate rules regarding alien registration, which only adds to the complexity and comprehensiveness of the federal alien-registration scheme. *E.g.*, 8 U.S.C. §§ 1302(c), 1303(a). And there is no Supreme Court precedent holding that the entry and reentry provisions form a comprehensive scheme that displaces supplemental state legislation.

**3.** The district court acknowledged that "*Arizona* focused on noncitizen registration not noncitizen entry and reentry," but thought that "*Arizona*'s logic … naturally extend[s]" to the regulations governing entry and reentry. *Oklahoma*, 739 F. Supp. 3d at 998. Yet the district court did not explain how the regulation of unlawful entry/reentry in §§ 1325(a) and 1326(a) is sufficiently comprehensive to trigger field preemption. (They are not, as just explained.) Instead, relying almost entirely on the stay-stage decision in *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024), the district court appeared to find field preemption by expanding the field beyond only unlawful entry/reentry, but to include all matters that touch on "the entry, presence, and removal of noncitizens." *Oklahoma*, 739 F. Supp. 3d at 991; *see id.* at 998–99 (describing field to

cover "entry and stay of aliens in the United States" (quoting *Texas*, 97 F.4th at 280)).[2]

That conception of the field is far too expansive. *See Kansas*, 589 U.S. at 208 (court must "first identify the field in which this is said to have occurred"). Defined at that level of generality, the relevant field would also include the INA's regulations governing alien registration—yet *Arizona* treated that as a distinct field for purposes of the field-preemption analysis. 567 U.S. at 400–03; *accord Kansas*, 589 U.S. at 208 (evaluating "'field of fraud on the federal employment verification system'"). Here, the field of *unlawful* entry/reentry is a distinct subset of the INA's numerous subjects of regulation—like that of alien registration—and it must be evaluated on its own for purposes of the field-preemption analysis.

The district court also reasoned that state legislation in the entry/reentry field would frustrate the "discretion on enforcement" of the federal government. *Oklahoma*,

---

[2] The Fifth Circuit issued a now-vacated opinion holding that a Texas law making it a state offense to violate the INA's entry and reentry bars is field and conflict preempted. *See United States v. Texas*, 144 F.4th 632 (5th Cir. 2025), *rehr'g en banc granted and opinion vacated*, 2025 WL 2493531 (5th Cir. Aug. 29, 2025). The Texas law differs from House Bill 4156 in materials respects, including because the Texas law authorized state judges to order that illegal aliens be removed from the United States and returned to the foreign nation from which they entered or attempted to enter. *Id.* at 641. In any event, to the extent the Fifth Circuit's now-vacated opinion concluded that the INA occupies the field of unlawful alien entry/reentry or that state laws that mirror federal law are automatically (and facially) conflict preempted, the United States disagrees. The United States does not address here the portion of Oklahoma's House Bill 4156 that requires illegal aliens convicted of violating its entry/reentry prohibition to "leave the state within seventy-two [] hours," which may pose different and more complex questions. In all events, that portion of House Bill 4156 is not a basis for holding the statute invalid on its face.

739 F. Supp. 3d at 1001; *see Drummond II*, 2025 WL 1573590, at *6. That emphasis on enforcement discretion cannot be reconciled with the Supreme Court's more recent holding in *Kansas* that "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." 589 U.S. at 212. Indeed, the district court acknowledged that "Congress's intent—not the shifting enforcement priorities of presidential administrations—controls the preemption inquiry." *Drummond II*, 2025 WL 1573590, at *5. The same goes for the district court's concerns regarding the "broader implications surrounding immigration policy," such as "foreign policy," *id.* at *6, or "the perceptions and expectations of aliens in this country," *Oklahoma*, 739 F. Supp. 3d at 1001. To be sure, such considerations may indicate why Congress chose to regulate comprehensively in a particular field, but they are not a *basis* for preemption. After all, any application of criminal law to unauthorized aliens affects the "expectations" of aliens in this country, but "implied preemption "must be grounded 'in the text and structure of the statute at issue,'" *Kansas*, 589 U.S. at 208; a "brooding federal interest" is "never … enough to win preemption of a state law." *Virginia Uranium, Inc.*, 587 U.S. at 767 (plurality opinion). Were it otherwise, the Supreme Court's decision in *Arizona* would have been a great deal shorter. For the same reasons, the concern of a foreign government, by itself, does not have preemptive effect, either. *Cf.*, *Oklahoma*, 739 F. Supp. 3d at 1002 (raising "concern[s]" expressed by Mexico over the Oklahoma law).

### B.    House Bill 4156 is not conflict preempted.

House Bill 4156 also is not unconstitutional as a matter of conflict preemption. A state law may "conflict with federal law" when "compliance with both federal and state regulations is a physical impossibility," or—in limited circumstances—"where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (quotation marks omitted). As with field preemption, conflict preemption "does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" as "such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (plurality opinion) (quotation marks omitted).

There is no dispute that it is "possible" for Plaintiffs "to comply" with both federal law and House Bill 4156. *Kansas*, 589 U.S. at 210–11. Even so, the district court thought that House Bill 4156 is preempted because it conflicts with federal immigration enforcement priorities. There is no conflict. Certainly, House Bill 4156 does not conflict with federal law *on its face*—such that "no set of circumstances exists under which the Act would be valid'" and the law is "unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

**1.**    House Bill 4156 does not conflict with the federal entry and reentry statutes. The Oklahoma law does not authorize any conduct forbidden by federal law,

14

but instead uses language borrowed nearly verbatim from the INA to prohibit conduct that parallels conduct prohibited by the INA. *Supra*, pp. 5–6. Oklahoma's law is in harmony, not conflict, with federal law. *Accord* 8 U.S.C. § 1357(g)(10) (authorizing states to "cooperate with the Attorney General" in immigration enforcement).[3]

The mere fact that House Bill 4156 "overlap[s]" with federal law "does not even begin to make a case for conflict preemption." *Kansas*, 589 U.S. at 211–12; *see also id.* at 212 (mere "overlap" between federal and state law provides "no basis for inferring" a preemptive conflict). States generally are free to criminalize conduct also proscribed by Congress, and to attach additional penalties to those offenses. No one would doubt that states may adopt, for example, the federal antitrust standard as their own and attach additional penalties for violations. Laws targeting illegal immigration are no exception. The Supreme Court has said so explicitly: "Despite the exclusive federal control of this Nation's borders, we cannot conclude that the States are without any power to deter the influx of persons entering the United States against federal law, and whose numbers might have a discernible impact on traditional state concerns." *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982); *accord Gilbert v. Minnesota*, 254 U.S. 325, 331 (1920) ("[T]he state is

---

[3] It is true that Senate Bill 4-C differs from federal law in that it is triggered when an unauthorized alien enters Oklahoma, whereas federal law prohibits unauthorized entry into the United States. That in-state nexus is merely a reflection of the Constitution's limits on a state's ability to regulate outside the state's borders. *See, e.g.*, *National Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023); *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001). House Bill 4156 merely punishes persons within its jurisdiction who are unlawfully present under federal law because they illegally entered or reentered the country.

not inhibited from making the national purposes its own purposes, to the extent of exerting its police power to prevent its own citizens from obstructing the accomplishment of such purposes." (quotation marks omitted)); *California v. Zook*, 336 U.S. 725, 735 (1949) ("[T]here is no conflict in terms, and no possibility of such conflict, [if] the state statute makes federal law its own….").

**2.**     The district court did not identify any conflict between the conduct proscribed by House Bill 4156 and that prohibited by the INA.  To the contrary, the court acknowledged that "[t]he probative provisions of H.B. 4156 … largely resemble §§ 1325(a) and 1326(a)," and "H.B. 4156 criminalizes conduct already proscribed by federal law."  *Oklahoma*, 739 F. Supp. 3d at 997, 998; *see id.* (noting that the two laws "are nearly identical").

Nonetheless, the court purported to identify a "sweeping and glaring conflict" arising from the provision of federal law that authorizes the Attorney General to enter into "written agreement[s]" with States or their political subdivisions to engage in certain immigration-enforcement activities.  8 U.S.C. § 1357(g); *see Oklahoma*, 739 F. Supp. 3d at 1003–04.  According to the district court, § 1357(g) authorizes States to "cooperate" with the federal government, not engage in "unilateral action," and so it is "'not a grant of authority to a state to enact a statute making it a state crime to be unlawfully present.'"  *Oklahoma*, 739 F. Supp. 3d at 1004 (quoting *Texas*, 97 F.4th at 292–93).  That misses the point.  The agreements authorized by § 1357(g) allow state or local officials to step into the shoes of *federal* immigration officers to enforce *federal*

law.  8 U.S.C. § 1357(g)(1)–(5), (8) (state official acting under agreement with Attorney General "shall be considered to be acting under color of Federal authority"); *see also id.* § 1324(c) (authorizing state officials to enforce federal anti-harboring prohibition).  It makes sense that cooperation, rather than unilateral action, would be the rule when *state* officials are acting under color of *federal* law.  But that does not imply congressional intent to foreclose complementary state *legislation*, including in the unlawful entry/reentry field.

In addition, the district court thought that House Bill 4156 conflicts with federal law because the Oklahoma law would allow for prosecution of aliens who receive legal status by the federal government.  *Oklahoma*, 739 F. Supp. 3d at 1003.  House Bill 4156 contains provisions specifically designed to ameliorate such conflict.  Specifically, it provides that it is an "affirmative defense to prosecution" that "[t]he federal government has granted the defendant" "lawful presence in the United States" or "asylum," or if the "defendant was approved for benefits under the Deferred Action for Childhood Arrivals program between June 15, 2012, and July 16, 2021."  Okla. Stat. § 1795(F).  These provisions manifest Oklahoma's intent to *avoid* conflict with federal law.  However, the district court thought this was not enough because the Oklahoma law allows for the conviction of an alien who has illegally entered or reentered the country and has no lawful status *now*, but *could* receive some form of lawful status at some indeterminate point in the future.  *Oklahoma*, 739 F. Supp. 3d at 1003 ("Until an undocumented alien is ordered deported by the Federal Government, no State can be

17

assured that the alien will not be found to have a federal permission to reside in the country."). Of course, if Oklahoma sought to punish an alien for conduct authorized by federal law, the alien could bring an as-applied challenge to that enforcement action. But the mere possibility of some conflict is not sufficient to render House Bill 4156 in conflict with federal law "in *all* of its applications." *Washington State Grange*, 552 U.S. at 449 (emphasis added).

The district court acknowledged that it could not facially enjoin House Bill 4156 unless it was found to "violate[] the Constitution in all, or virtually all, of its applications." *Drummond II*, 2025 WL 1573590, at *5 n.10. But the district court failed to apply this standard. Instead, it reasoned that "a facial challenge" is not "defeat[ed]" simply because "there could be 'murderers' and 'rapists' prosecuted under H.B. 4156." *Id.* That is the wrong question. The relevant question, as the district court recognized, is "whether H.B. 4156's regulation of *immigration* conflicts with federal law" *in all its applications. Id.* The district court never purported to make that showing.

Finally, the court suggested that House Bill 4156 is preempted because it interferes with the federal government's enforcement discretion. *Oklahoma*, 739 F. Supp. 3d at 1000–01 (noting that "different Presidents may exercise that discretion differently"). That line of reasoning is foreclosed by *Kansas*: "the possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption." 589 U.S. at 212. Only federal *law* has preemptive effect—"the criminal law enforcement

18

priorities or preferences of federal officers" do not. *Id.*[4]  Even were it otherwise, here

the enforcement priorities of the United States and Oklahoma now align—both favor

maximum enforcement of the immigration laws to deter illegal immigration.  And even

if some disagreement in priorities were to later arise in a particular case or context, that

still would not render House Bill 4156 in conflict with federal enforcement priorities

"in *all* of its applications."  *Washington State Grange*, 552 U.S. at 449 (emphasis added).

*          *          *

Accordingly, House Bill 4156 is not preempted, either as a matter of field

preemption or conflict preemption.

## CONCLUSION

The district court's preliminary injunction should be reversed.

---

[4] A different case would be presented if a state sought to regulate on a subject where the federal agency with statutory authority over that subject had exercised its discretion not to promulgate regulations (or had adopted regulations different than the state law).  In that context, conflict preemption may apply.  It does not follow, however, that preemption follows simply because a complementary state law may be in tension with the existing administration's preferred level of enforcement (or non-enforcement). *See Kansas*, 589 U.S. at 212.

19

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC McARTHUR
*Deputy Assistant Attorney General*

*s/ Benjamin Hayes*
MARK R. FREEMAN
BENJAMIN HAYES
*Attorneys*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1754*
*Benjamin.T.Hayes@usdoj.gov*

September 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,944 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Benjamin Hayes*
Benjamin Hayes

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system. No paper copies are required pursuant to 10th Cir. R. 29.3.

*s/ Benjamin Hayes*
Benjamin Hayes