**No. 25-06080**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

PADRES UNIDOS DE TULSA, ET AL.
*Plaintiffs-Appellees,*

v.

GENTNER DRUMMOND, ET AL.
*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Western District of Oklahoma, Case No. 5:24-cv-00511-J

**RESPONSE BRIEF OF PLAINTIFFS-APPELLEES**

**ORAL ARGUMENT IS REQUESTED**

Cody Wofsy
Spencer Amdur
Oscar Sarabia Roman
American Civil Liberties Union
Foundation, Immigrants' Rights
Project
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
*cwofsy@aclu.org*
*samdur@aclu.org*
*osarabia@aclu.org*

Noor Zafar
Grace Choi
Omar Jadwat
American Civil Liberties Union
Foundation, Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
*nzafar@aclu.org*
*gchoi@aclu.org*
*ojadwat@aclu.org*

*Additional Counsel on Signature Page*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Tenth Circuit Rule 26.1A, Plaintiffs-Appellees Padres Unidos de Tulsa and League of United Latin American Citizens state that they do not have parent corporations, and that no publicly held corporation owns more than ten percent of any stake or stock in any of the Appellees.

*/s/ Noor Zafar*
Noor Zafar
October 29, 2025

i

# TABLE OF CONTENTS

PRIOR OR RELATED APPEALS..............................................................................1

STATEMENT OF ISSUES...................................................................................1

INTRODUCTION.............................................................................................2

STATEMENT OF THE CASE .................................................................................4

  I.  CONGRESS'S PERVASIVE REGULATION OF ENTRY AND REENTRY ..................................................................................4

  II.  OKLAHOMA'S STATE IMMIGRATION LAW..........................................6

  III.  PARTIES AND PROCEDURAL HISTORY ...............................................7

SUMMARY OF THE ARGUMENT................................................................8

ARGUMENT ...............................................................................................10

  I.  STANDARD OF REVIEW ......................................................................10

  II.  OKLAHOMA'S THRESHOLD ARGUMENTS LACK MERIT ...............11

    A.  Plaintiffs Have Standing .......................................................... 11

    B.  Plaintiffs May Sue in Equity .................................................... 15

  III.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.............21

    A.  H.B. 4156 Is Field Preempted....................................................22

    B.  H.B. 4156 Creates an Unlawful Scheme of State Expulsion......................31

    C.  H.B. 4156 Conflicts with Federal Immigration Law .................................33

    D.  Oklahoma's Invasion Defense is Meritless................................39

    E.  H.B. 4156 Violates the Commerce Clause .................................41

IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING PLAINTIFFS TO PROCEED UNDER PSEUDONYM ..............43

V.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING PROVISIONAL CLASS CERTIFICATION.................................49

VI.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN WEIGHING THE EQUITIES ..............................................................................50

CONCLUSION ......................................................................................54

STATEMENT REGARDING ORAL ARGUMENT ..............................54

CERTIFICATE OF COMPLIANCE ......................................................54

CERTIFICATE OF DIGITAL SUBMISSION .......................................55

CERTIFICATE OF SERVICE ...............................................................55

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. Mem'l Eye, P.A.*,
2010 WL 5149269 (D. Utah Dec. 13, 2010) ..................................................... 54

*Am. Ass'n of Univ. Professors v. Rubio*,
2025 WL 2777659 (D. Mass. Sept. 30, 2025) .................................................. 44

*Aptive Env't, LLC v. Town of Castle Rock, Colo.*,
959 F.3d 961 (10th Cir. 2020) ........................................................................... 12

*Arizona v. U.S.*,
567 U.S. 387 (2012).............................................. 2, 4-5, 19, 22-26, 28, 32, 34-35

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015).....................................................................15-16, 18-21

*Biden v. Texas*,
597 U.S. 785 (2022).............................................................................................5

*Chamber of Com. of U.S. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010) .............................................................. 10, 21, 51

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011)........................................................................................... 29

*Chy Lung v. Freeman*,
92 U.S. 275 (1875).................................................................................... 2, 23

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978).......................................................................................... 42

*CNSP, Inc. v. Webber*,
2020 WL 2745456 (D.N.M. May 27, 2020).................................................... 16

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. 2014) ......................................................................... 49

*Consumer Data Indus. Ass'n v. King*,
678 F.3d 898 (10th Cir. 2012) .................................................................... 11, 12

*Covington & C. Bridge Co. v. Commonwealth of Kentucky*,
  154 U.S. 204 (1894)............................................................................ 42

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000)..................................................................... 34, 37

*Crown Castle Fiber, L.L.C. v. City of Pasadena*,
  76 F.4th 425 (5th Cir. 2023) ........................................................ 17

*D.B.U. v. Trump*,
  2025 WL 1101149 (D. Colo. Apr. 14, 2025)................................. 45

*DeCanas v. Bica*,
  424 U.S. 351 (1976)..................................................................... 23, 29

*Dennis v. Higgins*,
  498 U.S. 439 (1991)............................................................................ 21

*Dep't of Revenue of Ky. v. Davis*,
  553 U.S. 328 (2008)............................................................................ 42

*Deseret Apartments, Inc. v. U.S.*,
  250 F.2d 457 (10th Cir. 1957) ....................................................... 53

*Doe #1 v. Trump*,
  785 F. Supp. 3d 575 (D. Ariz. 2025) ............................................ 45

*Doe v. Hobson*,
  300 F.R.D. 576 (M.D. Ala. 2014)............................................... 45, 48

*Doe v. ICE*,
  2024 WL 4389461 (D.N.M. Oct. 3, 2024) ..................................... 45

*Doe v. Noem*,
  781 F. Supp. 3d 1055 (E.D. Cal. 2025) ......................................... 47

*Doe v. Wantong Int'l, Inc.*,
  2025 WL 712762 (M.D. Fla. Mar. 5, 2025) ................................... 48

*Does v. Rodriguez*,
  2007 WL 684114 (D. Colo. Mar. 2, 2007) ................................. 26, 45

*Edwards v. California*,
  314 U.S. 160 (1941)..................................................................... 42, 43

*Evans v. Utah*,
  21 F. Supp. 3d 1192 (D. Utah 2014)................................................... 50

*Ex parte Young*,
  209 U.S. 123 (1908) ............................................................... 3, 8, 15

*Faith Action for Cmty. Equity v. Hawaii*,
  2014 WL 320587 (D. Haw. Jan. 29, 2014) ...................................... 45

*Farmworker Ass'n of Fla., Inc. v. Moody*,
  734 F. Supp. 3d 1311 (S.D. Fla. 2024) ....................................... 50, 54

*Farmworker Ass'n of Fla. v. Uthmeier*,
  -- F. Supp. 3d --, 2025 WL 775558 (S.D. Fla. Mar. 11, 2025) ............. 16, 19, 54

*Femedeer v. Haun*,
  227 F.3d 1244 (10th Cir. 2000) ....................................................... 43

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016) ........................................................ 51

*Fla. Immigrant Coal. v. Uthmeier*,
  780 F. Supp. 3d 1235 (S.D. Fla. 2025) ........................................ 2, 15, 22, 28-30

*Fla. Immigrant Coal. v. Uthmeier*,
  No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025)........................ 2, 22

*Fong Yue Ting v. U.S.*,
  149 U.S. 698 (1893) ....................................................................... 26

*Frank v. Lee*,
  84 F.4th 1119 (10th Cir. 2023) ........................................................ 21

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ....................................................................... 31

*Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*,
  916 F.3d 792 (10th Cir. 2019) ........................................................ 11

*Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
  691 F.3d 1250 (11th Cir. 2012) .......................................... 16,17, 21, 23, 33, 35

*Gen. Motors Corp. v. Urb. Gorilla, LLC*,
  500 F.3d 1222 (10th Cir. 2007) ....................................................... 10

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)...................................................................... 18

*Griess v. Colorado*,
   841 F.2d 1042 (10th Cir. 1988) ........................................................ 41

*Heartland Acad. Cmty. Church v. Waddle*,
   335 F.3d 684 (8th Cir. 2003) ............................................................ 50

*Hines v. Davidowitz*,
   30 F. Supp. 470 (1939)..................................................................... 27

*Hines v. Davidowitz*,
   312 U.S. 52 (1941)..................................................................... 14, 26

*Hisp. Int. Coal. of Ala. v. Gov. of Ala.*,
   691 F.3d 1236 (11th Cir. 2012) ........................................................ 47

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)......................................................................... 12

*Idaho Org. of Res. Councils v. Labrador*,
   780 F. Supp. 3d 1013 (D. Idaho 2025) ........................... 2, 13, 15, 16, 22, 53, 54

*Initiative & Referendum Inst. v. Walker*,
   450 F.3d 1082 (10th Cir. 2006) (en banc) ............................................. 12, 13, 14

*Iowa Migrant Movement for Just. v. Bird*,
   -- F.4th --, No. 24-2263, 2025 WL 2984379 (8th Cir. Oct. 23,
   2025) …………………2, 3, 5, 8, 12, 13, 15-17, 22, 24, 25, 30-32, 34-39, 41, 53

*Iowa Migrant Movement for Just. v. Bird*,
   No. 4:24-cv-00161-SHL-SBJ (S.D. Iowa June 6, 2024) .................................. 48

*Isr. Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*,
   16 F.3d 198 (7th Cir. 1994) ............................................................. 19

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*,
   31 F.3d 1536 (10th Cir. 1994) ........................................................... 51

*Kansas v. Garcia*,
   589 U.S. 191 (2020)....................................................... 9, 30, 31, 36, 37

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240 (1933).................................................................. 53

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).................................................................. 31

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001).................................................................. 31

*Lozano v. City of Hazleton*,
    620 F.3d 170 (3d Cir. 2010)................................ 14, 17, 25, 27, 48, 53

*Luo v. Wang*,
    71 F.4th 1289 (10th Cir. 2023) ..................................................... 11

*M.G. through Garcia v. Armijo*,
    117 F.4th 1230 (10th Cir. 2024) ................................................... 20

*M.K.A. v. Sec'y of Dep't of Homeland Sec.*,
    2025 WL 2912632 (D. Kan. Oct. 14, 2025) ....................................... 47

*Make the Rd. N.Y. v. Pompeo*,
    475 F. Supp. 3d 232 (S.D.N.Y. 2020) ............................................. 52

*McKennon v. Nashville Banner Publ'g Co.*,
    513 U.S. 352 (1995).................................................................. 53

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).................................................................. 20

*Medina v. Planned Parenthood S. Atl.*,
    145 S. Ct. 2219 (2025)............................................................... 21

*Murphy v. NCAA*,
    584 U.S. 453 (2018)......................................................... 13, 18, 20

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
    923 F.3d 779 (10th Cir. 2019) ..................................................... 11

*Nishimura Ekiu v. U.S.*,
    142 U.S. 651 (1892).................................................................. 25

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................. 51

*Ore. Waste Sys., Inc. v. Dep't of Env't Quality of Ore.*,
511 U.S. 93 (1994) ................................................................ 42, 43

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983) ...................................................................... 39

*Plyler v. Doe*,
457 U.S. 202 (1982) ................................................................ 14, 29

*Pub. Utilities Comm'n of Ohio v. United Fuel Gas Co.*,
317 U.S. 456 (1943) ...................................................................... 52

*R.F.M. v. Nielsen*,
365 F. Supp. 3d 350 (S.D.N.Y. 2019) ........................................... 48

*Rex v. Owens ex rel. State of Okla.*,
585 F.2d 432 (10th Cir. 1978) ...................................................... 49

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) ...................................................................... 22

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) ...................................................... 47

*Safe Streets Alliance v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) ..................................... 3, 9, 16-18

*Schneidewind v. ANR Pipeline Co.*,
485 U.S. 293 (1988) ...................................................................... 27

*Seminole Tribe v. Florida*,
517 U.S. 44 (1996) ........................................................................ 20

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) ........................................................................ 21

*Speech First, Inc. v. Shrum*,
92 F.4th 947 (10th Cir. 2024) ...................................................... 48

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...................................................................... 12

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...................................................................... 12

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) ........................................................................ 50

*U.S. v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) ...................................... 27, 32, 33, 51

*U.S. v. Guest*,
    383 U.S. 745 (1966) ............................................................................ 42

*U.S. v. Locke*,
    529 U.S. 89 (2000) .............................................................................. 25

*U.S. v. Oklahoma*,
    5:24-cv-00511 (W.D. Okla. June 28, 2024) .................................. 7, 40

*U.S. v. Oklahoma*,
    No. 24-6144 (10th Cir. filed Nov. 20, 2024) ................................... 31

*U.S. v. Pink*,
    315 U.S. 203 (1942) ............................................................................ 52

*U.S. v. Salerno*,
    481 U.S. 739 (1987) ............................................................................ 41

*U.S. v. Supreme Ct. of New Mexico*,
    839 F.3d 888 (10th Cir. 2016) .......................................................... 41

*U.S. v. Texas*,
    144 F.4th 632 (5th Cir.) ............................2, 16, 17, 22-24, 30, 35-37, 39, 41, 52

*U.S. v. Texas*,
    719 F. Supp. 3d 640 (W.D. Tex. 2024) ............................................ 40

*U.S. v. Texas*,
    97 F.4th 268 (5th Cir. 2024) ............................ 4, 5, 16, 25, 34, 39, 40

*U.S. v. Texas*,
    No. 24-50149 (5th Cir. filed July 31, 2025) .................................... 22

*United States v. Abrego*,
    2025 WL 2814712 (M.D. Tenn. Oct. 3, 2025) ................................ 44

*United States v. Texas*,
    599 U.S. 670 (2023) .............................................................. 5, 24, 35

*US Airways, Inc. v. O'Donnell*,
   627 F.3d 1318 (10th Cir. 2010) ........................................................ 27

*Uthmeier v. Fla. Immigrant Coal.*,
   145 S. Ct. 2872 (2025) ........................................................ 2, 22, 24

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .................................................... 14, 17

*Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*,
   535 U.S. 635 (2002) .................................................................. 17

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*,
   726 F.3d 524 (5th Cir. 2013) ........................................................ 14

*Worthington v. Anderson*,
   386 F.3d 1314 (10th Cir. 2004) ...................................................... 54

*Ex parte Young*,
   209 U.S. 123 (1908) ................................................................... 8

*Zschernig v. Miller*,
   389 U.S. 429 (1968) .................................................................. 31

## Constitutional Provisions

U.S. Const. art. I, § 8, cl. 3 ........................................................ 41

## Statutes

2024 Okla. Sess. Laws 2d Reg. Sess. ch. SB 1280 .................................... 51

2025 Okla. Sess. Laws 1st Reg. Sess. ch. HB 1215 .................................... 51

8 U.S.C. § 1101(a)(15)(T) ......................................................... 5, 24

8 U.S.C. § 1101(a)(15)(T)(i) ......................................................... 39

8 U.S.C. § 1101(a)(15)(U) ......................................................... 5, 24

8 U.S.C. § 1101(a)(15)(U)(iii) ....................................................... 39

8 U.S.C. §§ 1151-1382 ......................................................................4

8 U.S.C. § 1153 ............................................................................ 23

8 U.S.C. § 1158 ................................................................. 5, 24, 32

8 U.S.C. § 1182 ..............................................................................4

8 U.S.C. § 1182(a)(6) .....................................................................4

8 U.S.C. § 1182(d)(5)(A) ............................................................. 23

8 U.S.C. § 1184 ........................................................................... 23

8 U.S.C. § 1225 ..................................................................... 28, 32

8 U.S.C. § 1225(b) ...................................................................... 23

8 U.S.C. § 1225(b)(1) ....................................................................4

8 U.S.C. § 1225(b)(1)(A)(ii) ........................................................ 32

8 U.S.C. § 1226 ........................................................................... 28

8 U.S.C. § 1226(a) ....................................................................... 23

8 U.S.C. § 1226(b) ...................................................................... 23

8 U.S.C. § 1226(c) ....................................................................... 23

8 U.S.C. § 1229 ........................................................................... 32

8 U.S.C. § 1229(a)(1)(F)(i) .......................................................... 32

8 U.S.C. § 1229a ............................................................... 4, 28, 32

8 U.S.C. § 1229b(b)(1) ................................................................ 36

8 U.S.C. § 1231 ........................................................................... 28

8 U.S.C. § 1231(a)(1)(A) ............................................................. 32

8 U.S.C. § 1231(b)(3) ........................................................ 5, 24, 32

8 U.S.C. § 1321 ..............................................................................4

8 U.S.C. § 1323 ........................................................................ 4, 23

8 U.S.C. § 1324 ................................................................... 4, 14, 23

8 U.S.C. § 1325 ................................................... 4, 19, 23, 29, 34

8 U.S.C. § 1325(a) ......................................................................... 28

8 U.S.C. § 1326 ................................................... 4, 19, 23, 29, 34

8 U.S.C. § 1327 .............................................................................. 23

8 U.S.C. § 1328 .............................................................................. 23

8 U.S.C. § 1329 .............................................................................. 23

8 U.S.C. §§ 1357(g)(1)-(10) ....................................................... 39

18 U.S.C. § 758 .............................................................................. 39

18 U.S.C. § 1590 ............................................................................ 39

22 U.S.C. § 7105(c)(3)(C)(i) ........................................................ 39

42 U.S.C. § 1983 ..................................................................... 18, 21

Ariz. Rev. Stat. § 13-1509(F) ....................................................... 28

Fla. S.B. 4-C, § 4, 2025C Leg. (Fla. 2025) ................................ 33

Iowa S.F. 2340, 90th Gen. Assemb. (Iowa 2024) ...................... 33

Okla. Stat. tit. 21, § 748 ............................................................... 51

Okla. Stat. tit. 21, § 1029 ............................................................. 51

Okla. Stat. tit. 21, § 1081 ............................................................. 51

Okla. Stat. tit. 21, § 1795(B) ....................... 6, 7, 11, 12, 26, 28, 32, 33, 38

Okla. Stat. tit. 63, § 2-401 ........................................................... 51

Okla. Stat. tit. 63, § 2-415 ........................................................... 51

Okla. Stat. tit. 63, § 2-509 ........................................................... 51

**Other Authorities**

*Nat'l Inst. of Just.* (Sept. 12, 2024),
https://perma.cc/GRD7-K7WE ........................................................... 52

*News9* (Feb. 12, 2025),
https://perma.cc/P9XS-FBQ5 ........................................................... 46

OFF. OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, REVIEW OF THE
DEPARTMENT OF JUSTICE'S PLANNING AND IMPLEMENTATION OF ITS ZERO
TOLERANCE POLICY AND ITS COORDINATION WITH THE DEPARTMENTS OF
HOMELAND SECURITY AND HEALTH AND HUMAN SERVICES, REP. 21-028
(Evaluation & Inspections Div. 2021), https://perma.cc/XB7P-M8FG .............5

*OKC Fox 25* (May 14, 2024),
https://perma.cc/PR5E- L4F6 ........................................................... 53

*Oklahoma*, U.S. Dep't of Just.,
https://perma.cc/5R4E-H6QF ........................................................... 45

*The Oklahoman* (Aug. 9, 2025),
https://perma.cc/5NUW-SHAS ........................................................... 46

Tex. S.B. 4, 88th Leg., 4th Spec. Sess. (Tex. 2023) ................................. 33

*Texas Tribune* (May 30, 2025),
https://perma.cc/N66U-ZHZ4 ........................................................... 44

"Frontline Against Fentanyl," *U.S. Customs & Border Prot.*
(Sept. 11, 2025), https://perma.cc/DA5H-WM78 ........................................... 52

*"Unheard Of": Illegal Border Crossings Plummet to Another New Record
Low*, THE WHITE HOUSE (Aug. 1, 2025), https://perma.cc/D27M-VPJK ......... 52

## PRIOR OR RELATED APPEALS

*United States v. State of Oklahoma*, No. 24-06144 (10th Cir. July 17, 2024), *appeal dismissed as moot*, 2025 WL 1993431 (10th Cir. Mar. 25, 2025).

## STATEMENT OF ISSUES

1. Whether the district court correctly concluded that Plaintiffs are likely to show that they have standing and a cause of action in equity.

2. Whether the district court correctly concluded that Plaintiffs are likely to show that H.B. 4156 is:

   a. field preempted where there is a dominant federal interest and a comprehensive federal statutory and regulatory framework governing noncitizen entry and reentry; and

   b. conflict preempted because it frustrates federal discretion and permits unilateral state regulation of immigration.

3. Whether H.B. 4156 violates the Commerce Clause by restricting the movement of people at Oklahoma's borders.

4. Whether the district court abused its discretion in permitting Individual Plaintiffs to proceed under pseudonyms.

5. Whether the district court abused its discretion in certifying a provisional "Entry Class" and "Reentry Class."

6. Whether the district court abused its discretion in concluding that the equities

1

favor an injunction.

## INTRODUCTION

For 150 years, the Supreme Court has made clear that the regulation of noncitizen entry and reentry is a matter committed exclusively to the federal government. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875); *Arizona v. U.S.*, 567 U.S. 387, 399-403 (2012). Oklahoma now asks this Court to cast aside that settled precedent and authorize a state immigration scheme that Congress has not sanctioned. The district correctly rejected that request, joining every other court to have considered laws of this type and holding Oklahoma's House Bill 4156 ("H.B. 4156") preempted by the comprehensive federal system governing the entry, admission, and presence of noncitizens. *See Iowa Migrant Movement for Just. v. Bird*, -- F.4th --, No. 24-2263, 2025 WL 2984379 (8th Cir. Oct. 23, 2025) ("*Iowa*"); *U.S. v. Texas*, 144 F.4th 632, 677 (5th Cir.), *vacated pending reh'g en banc*, 150 F.4th 656 (5th Cir. 2025); *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1258-64 (S.D. Fla. 2025) ("*Florida*"); *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1039-43 (D. Idaho 2025) ("*IORC*"); *see also Uthmeier v. Fla. Immigrant Coal.*, 145 S. Ct. 2872 (2025) (mem.) (denying application for stay); *Fla. Immigrant Coal. v. Uthmeier*, No. 25-11469, 2025 WL 1625385, at *3 (11th Cir. June 6, 2025) (same).

Oklahoma does not even acknowledge this authority—much less offer any

2

basis to depart from it. Instead, it claims that a change in immigration policy by the Department of Homeland Security renders obsolete the longstanding exclusion of states from entry regulation. "But the Supremacy Clause gives priority to 'the Laws of the United States,' not the . . . preferences of federal officers." *Iowa*, 2025 WL 2984379, at *10 (cleaned up). And Oklahoma ignores the key teaching of *Arizona* regarding conflict preemption: states are prohibited from engaging in unilateral enforcement of immigration law.

With the overwhelming weight of authority contradicting its position on the merits, Oklahoma focuses its attention on threshold arguments. Those fare no better. The State relies heavily on Plaintiffs' supposed law breaking to challenge their standing, pseudonymity, and equities arguments. But Plaintiffs and organizational members are longtime Oklahoma residents, simply going about their daily lives, caring for their families and communities. Many have applied for immigration relief, and the federal government is aware of their presence. Oklahoma's proposal would unjustifiably slam shut the courthouse doors on noncitizens subject to prosecution under preempted state laws, thereby immunizing such laws from review.

Finally, Plaintiffs have an equitable cause of action because they fall squarely within the *Ex parte Young* cause of action that *Safe Streets Alliance v. Hickenlooper* explicitly recognized. Indeed, no court has agreed with Oklahoma's arguments to the contrary.

H.B. 4156 is patently unconstitutional, and this Court should affirm the district court's injunction.

## STATEMENT OF THE CASE

### I.    CONGRESS'S PERVASIVE REGULATION OF ENTRY AND REENTRY

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona*, 567 U.S. at 394. Congress exercised that power in the Immigration and Nationality Act ("INA"), a comprehensive system regulating entry into and continued presence in the United States. *See generally* 8 U.S.C. §§ 1151-1382. The system "is comprehensive, complex, and national in scope." *U.S. v. Texas*, 97 F.4th 268, 285 (5th Cir. 2024); *Arizona*, 567 U.S. at 395.

That scheme balances federal policy goals, providing federal officers with a range of criminal and civil tools to regulate immigration. On the criminal side, unlawful entry and reentry after removal are federal offenses, along with various other criminal regulations related to irregular entries. 8 U.S.C. §§ 1325, 1326; *see also, e.g.*, 8 U.S.C. §§ 1321, 1323, 1324. On the civil side, Congress has specified categories of noncitizens who may be denied admission to the United States, *see* 8 U.S.C. § 1182, including those who enter between ports of entry, *see* 8 U.S.C. § 1182(a)(6). To decide whether a person who entered without inspection at a port will be removed, Congress has established several alternative removal procedures, 8

U.S.C. §§ 1229a, 1225(b)(1), and provided various forms of relief from removal, 8 U.S.C. §§ 1158, 1231(b)(3), 1101(a)(15)(U), (T).

Federal prosecutors and civil enforcement officers make decisions about how to deploy these tools collaboratively, taking into consideration various factors, including humanitarian concerns and the need to encourage cooperation of noncitizens who are victims and witnesses in criminal cases. *See Arizona*, 567 U.S. at 396, 400.[1] Indeed, "[a] principal feature of the removal system" that Congress designed "is the broad discretion" delegated to the federal Executive. *Id.* at 396. Federal officials "decide whether it makes sense to pursue removal at all," *id.*, and choose among the several removal processes Congress established. *See Biden v. Texas*, 597 U.S. 785, 801-03 (2022); *United States v. Texas*, 599 U.S. 670, 679 (2023). And, critically, "federal officials in charge of the comprehensive scheme" decide whether "to bring criminal charges against individuals" under the associated federal crimes, or whether doing so "would frustrate federal policies." *Arizona*, 567 U.S. at 402; *Texas*, 97 F.4th at 281, 289; *Iowa*, 2025 WL 2984379, at *9.

---

[1] *See* OFF. OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, REVIEW OF THE DEPARTMENT OF JUSTICE'S PLANNING AND IMPLEMENTATION OF ITS ZERO TOLERANCE POLICY AND ITS COORDINATION WITH THE DEPARTMENTS OF HOMELAND SECURITY AND HEALTH AND HUMAN SERVICES, REP. 21-028, 3, 4 nn.7 & 8 (Evaluation & Inspections Div. 2021), https://perma.cc/XB7P-M8FG (explaining that Customs and Border Protection ("CBP") often determines whether to process noncitizens civilly through one of the removal systems, or to refer them to the Department of Justice ("DOJ") for possible criminal prosecution, which in turn determines whether to accept or decline cases for prosecution).

5

## II.    OKLAHOMA'S STATE IMMIGRATION LAW

H.B. 4156's first provision criminalizes entry into the United States. It creates a new state crime of "impermissible occupation," which is defined as "willfully and without permission enter[ing] and remain[ing] in the  State of Oklahoma without having first obtained legal authorization to enter the United States." H.B. 4156, § 2(B) (codified at OKLA. STAT. tit. 21, § 1795(B)); *Id*. § 2(C)(1) (misdemeanors punishable by imprisonment for up to one year or $500 fine); *Id*. § 2(C)(2) (felonies punishable by up to two years' imprisonment).

H.B. 4156 recognizes limited affirmative defenses to "impermissible occupation," such as when the federal government has "granted" the noncitizen "lawful presence," "asylum," or "benefits under the federal Deferred Action for Childhood Arrivals program." *Id.* § 2(F).

The second provision of H.B. 4156 criminalizes reentry into the United States. It applies to individuals who enter, attempt to enter, or are present in Oklahoma after a previous denial of admission, exclusion, deportation, or removal from the United States, or any departure under a removal order. H.B. 4156 § 2(D). The statute provides exceptions for those who obtained federal consent to reenter before their arrival, or who can show consent was not required. §§ 2(D)(1), (2). A violation of this provision is a felony, with penalties of up to two years' imprisonment and a fine of up to $1,000. *Id.* § 2(D).

6

After a conviction under either provision, "the person shall be required to leave the state within seventy-two (72) hours following his or her conviction or release from custody, whichever comes later." H.B. 4156 §§ 2(C)(1), (2); *see also id.* § 2(D).

## III.   PARTIES AND PROCEDURAL HISTORY

Plaintiffs are two provisionally certified classes of noncitizens subject to arrest and prosecution under H.B. 4156. The Individual Plaintiffs are two individuals subject to prosecution under H.B. 4156 proceeding under pseudonyms, Barbara Boe and Christopher Coe, as well as two Oklahoma membership organizations, Padres Unidos de Tulsa ("Padres Unidos") and League of United Latin American Citizens Oklahoma City ("LULAC-OKC"), whose members are subject to prosecution under the law.

In May 2024, both the United States and Plaintiff Padres Unidos filed separate lawsuits seeking a preliminary injunction against the enforcement of H.B. 4156. The district court enjoined the law as field and conflict preempted. JA Vol. 1 at 042.[2] Because it had already granted the federal government's request for preliminary injunctive relief, it denied Plaintiff Padres Unidos's request for the same relief as moot. JA006; Order, *U.S. v. Oklahoma*, 5:24-cv-00511 (W.D. Okla. June 28, 2024),

---

[2] All references to the Appendix refer to the Joint Appendix and hereinafter will include pinpoint citations in the following format: JA[page].

ECF No. 40. Oklahoma appealed the injunction, and Plaintiff Padres Unidos was provisionally granted leave to intervene in the appeal. JA046. The matter was fully briefed and scheduled for argument before this Court. JA046.

On March 14, 2025, shortly after the change in administrations, the United States voluntarily dismissed its prior action against H.B. 4156. JA043. Soon after, Plaintiffs filed an amended complaint and sought a temporary restraining order ("TRO"). JA130, JA050. The district court granted a TRO and, subsequently, a preliminary injunction, enjoining enforcement of H.B. 4156 because it was preempted. JA194, JA297. It also granted provisional class certification and Individual Plaintiffs' motion to proceed under pseudonyms. JA312-14.

## SUMMARY OF THE ARGUMENT

*Every* court to have considered a law like H.B. 4156 has rejected it—including the Eighth Circuit just last week. *Iowa*, 2025 WL 2984379, at *16. The district court joined this consensus, correctly enjoining H.B. 4156 as a preempted regulation of noncitizen entry and presence. This Court should affirm.

Individual Plaintiffs and Padres Unidos and LULAC-OKC members have standing because they have a legally protected interest in not being arrested, prosecuted, and banished from Oklahoma under a preempted state law. And Plaintiffs have a well-established equitable cause of action to seek prospective relief against the enforcement of H.B. 4156 under *Ex parte Young*, 209 U.S. 123 (1908),

8

which *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), did not disturb.

On the merits, H.B. 4156 is both field and conflict preempted. Over 150 years of Supreme Court precedent establish that the regulation of entry and presence is an exclusively federal field. *Arizona* reaffirmed that states cannot enforce their own parallel immigration regimes and made clear that even complementary state regulation in a preempted field is prohibited. Oklahoma barely addresses *Arizona* and instead argues that *Kansas v. Garcia*, 589 U.S. 191 (2020), governs here. But that case concerned identity-theft statute prosecutions based on income-tax withholding forms, and in no way suggested that state regulation of entry is permissible. Moreover, H.B. 4156's banishment provision further heightens its illegality because it authorizes expulsions of noncitizens from Oklahoma.

H.B. 4156 is also conflict preempted because it undermines the discretion Congress vested in the federal government to consider a broad range of interests—including foreign affairs and humanitarian concerns—when engaging in immigration enforcement. H.B. 4156 undermines federal discretion because it authorizes state officials to unilaterally prosecute entry and reentry violations, in direct contradiction of *Arizona*.

Oklahoma's invocation of the State War Clause is likewise meritless. No court has ever held that this provision allows states to set up their own immigration

systems.

In addition to being preempted, H.B. 4156 also violates the Commerce Clause because it bans noncitizens who irregularly entered the United States from the State of Oklahoma and expels those convicted under the statute from the State. This provides an additional ground to affirm.

The proposed classes satisfied numerosity, and the district court acted well within its discretion in granting provisional class certification and permitting Individual Plaintiffs to proceed under pseudonyms.

Finally, the district court's weighing of the balance of equities and public interest was no abuse of discretion. H.B. 4156 will irreparably harm Plaintiffs, who face prosecution and banishment from the State and separation from their loved ones. Oklahoma faces no comparable harm—indeed, it has no cognizable interest in wresting control over immigration away from the federal government.

**ARGUMENT**

**I.    STANDARD OF REVIEW**

To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urb.*

*Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). This Court reviews a district court's grant of a preliminary injunction for abuse of discretion. *See Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 764 (10th Cir. 2010). Conclusions of law are reviewed de novo, and factual findings for clear error. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019).

The decision to permit Plaintiffs to proceed pseudonymously is likewise reviewed for abuse of discretion, *see Luo v. Wang*, 71 F.4th 1289, 1296 (10th Cir. 2023), as is the decision to certify a class, *see Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 790-91 (10th Cir. 2019).

## II.    OKLAHOMA'S THRESHOLD ARGUMENTS LACK MERIT

### A.    Plaintiffs Have Standing

The district court correctly held that both the individual and organizational Plaintiffs have standing. JA304-06. Individual Plaintiffs Barbara Boe and Christopher Coe have standing to pursue their pre-enforcement challenge to H.B. 4156 because they are subject to prosecution under the statute. *See* JA202-05; *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012). Boe is a noncitizen who has "enter[ed] and remain[ed] in the State of Oklahoma without having first obtained legal authorization to enter the United States." H.B. 4156 § 2(B); JA068, ¶ 5. And Coe is a noncitizen who was ordered "removed" and is now "found in Oklahoma." H.B. 4156 § 2(D); JA072, ¶ 5. Oklahoma suggests that some

plaintiffs may be immune from prosecution if they are "here with express federal permission," Br. 20-21, but none of H.B. 4156's defenses or exceptions are available to them. *See* H.B. 4156 §§ 2(D)(1)-(2); (F). *See Iowa*, 2025 WL 2984379, at *8 (rejecting similar argument).

Thus, Individual Plaintiffs have engaged in conduct that is "arguably proscribed by the statute they wish to challenge," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up), and they are "among the direct targets of" H.B. 4156. *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1097 (10th Cir. 2006) (en banc); *see also Consumer Data Indus.*, 678 F.3d at 902 ("[T]he existence of a statute implies the threat of its enforcement," and plaintiffs are "entitled to bring a pre-enforcement challenge based on the probability of future injury."); *Aptive Env't, LLC v. Town of Castle Rock, Colo.*, 959 F.3d 961, 975-76 (10th Cir. 2020) (standing where plaintiff was subject to prosecution).

Padres Unidos and LULAC-OKC also have associational standing.[3] JA205-08. Each organization has identified members who have made "specific allegations establishing that" they face a credible threat of prosecution under H.B. 4156. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see* JA077-78, ¶¶ 10-11; JA084-85, ¶¶13-14; JA206. And Oklahoma does not contest the remaining elements

---

[3] Padres Unidos and LULAC-OKC only assert standing on behalf of their members (i.e. associational standing), not organizational standing based on their own injuries.

12

of associational standing, which both organizations satisfy. JA206-08; *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Oklahoma's primary argument is that "a person complaining that government action will make his criminal activity more difficult lacks standing because his interest is not 'legally protected.'" Br. 19 (quoting *Walker*, 450 F.3d at 1093), 21-22.

But this misapprehends Plaintiffs' challenge. Plaintiffs have a significant legally protected interest in not being arrested, imprisoned, and banished from Oklahoma by a state entity that lacks the constitutional power to engage in such action against them. *See Murphy v. NCAA*, 584 U.S. 453, 479 (2018) (explaining that preemption represents a legally protected "federal right to be free from" impermissible state regulation); *IORC*, 780 F. Supp. 3d at 1033 (finding plaintiffs had a "'constitutional interest' in not being prosecuted under an allegedly federally preempted law"). Even if Individual Plaintiffs were "unlawfully" in the country under *federal* law, that would not defeat their standing to challenge a *state* prosecution and banishment under a law that is preempted. *See* JA201; JA306; *Iowa*, 2025 WL 2984379, at *5 ("But Iowa MMJ is not suing here to help its members violate federal immigration law. Rather, Iowa MMJ brings this suit to enjoin a *state* immigration law that it argues is unconstitutional").

*Walker* provides little guidance here. It involved a First Amendment challenge

13

to a state constitutional provision concerning ballot initiatives, and the Court had no occasion to consider standing in pre-enforcement preemption challenges to state criminal laws. JA304-06; 450 F.3d at 1089. And the Court's general statement that Oklahoma latches on to—which was offered without further commentary or explanation—cannot be construed as a categorical bar to preemption challenges by noncitizens who lack status. *See*, *e.g., Lozano v. City of Hazleton*, 620 F.3d 170, 194 (3d Cir. 2010), *cert. granted, judgment vacated on other grounds*, 563 U.S. 1030 (2011) (rejecting similar argument under "unclean hands" doctrine and noting that courts have "certainly considered judicial challenges brought by persons lacking lawful immigration status"); *Plyler v. Doe*, 457 U.S. 202, 206 (1982) (equal protection challenge by undocumented students). Indeed, Oklahoma's sweeping reading of *Walker* "would broadly eviscerate standing in preemption challenges of parallel state laws." JA201-02 (collecting cases). Yet courts routinely decide such cases. *See, e.g.*, *Hines v. Davidowitz*, 312 U.S. 52 (1941) (allowing suit by private plaintiff alleging that state noncitizen registration law was preempted by federal scheme); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015-17 (9th Cir. 2013) (finding standing to challenge preempted state law criminalizing transporting and harboring of undocumented individuals notwithstanding 8 U.S.C. § 1324); *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 529 (5th Cir. 2013) (en banc) (similar). Courts across the country have uniformly rejected similar

14

arguments. *See Iowa*, 2025 WL 2984379, at *2-5; *IORC*, 780 F. Supp. 3d at 1032-35, 1037-39; *Florida*, 780 F. Supp. 3d at 1253-57.

In any event, Plaintiff Coe and organizational members Moe and Soe have filed applications for immigration relief with the federal government, which is fully aware of their presence and may choose what steps to take as provided in federal law. JA073, ¶ 7; JA078, ¶ 11; JA084-85, ¶ 14. Plaintiffs do not ask the court "to bless prospective entry or reentry into the country—conduct that *is* criminalized under federal law." JA305-06. They do not seek to undertake any "criminal activity" that would be rendered "more difficult" if H.B. 4156 were enjoined. JA305. Plaintiffs are longtime Oklahoma citizens who simply seek to go about their lives, fulfilling their caretaking and financial responsibilities to their families, without the threat of arrest, detention, and banishment under a preempted law. Nothing bars them from challenging Oklahoma's attempt to wrest control of immigration enforcement decisions from Congress.

### B.    Plaintiffs May Sue in Equity

The district court correctly held that Plaintiffs may challenge H.B. 4156 under the Court's equitable jurisdiction pursuant to *Ex parte Young*. JA299-304. The Supreme Court has repeatedly confirmed the traditional "power of federal courts of equity" to enjoin enforcement of unconstitutional state laws. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015). And courts have

expressly recognized that equitable relief is available to enjoin preempted state immigration laws. *See Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1261-62 (11th Cir. 2012) ("*GLAHR*"); *Iowa*, 2025 WL 2984379, at \*6; *Texas*, 144 F.4th at 661-62; *Farmworker Ass'n of Fla. v. Uthmeier*, -- F. Supp. 3d --, 2025 WL 775558, at \*10-15 (S.D. Fla. Mar. 11, 2025) ("*FWAF*"); *IORC*, 780 F. Supp. 3d at 1032.

Oklahoma relies heavily on *Safe Streets Alliance*, Br. 23-27, but that decision recognized and confirmed the longstanding rule from *Ex parte Young*: even without a statutory cause of action, a "court may issue an injunction upon finding the state *regulatory actions* preempted," "if an individual claims federal law immunizes him from state *regulation*." 859 F.3d at 906 n.19 (quoting *Armstrong*, 575 U.S. at 326). That is precisely what Plaintiffs claim here, and no Court has accepted the State's argument. *See Iowa*, 2025 WL 2984379, at \*6 (plaintiffs could proceed in equity in similar challenge); *Texas*, 97 F.4th at 309-10 (Oldham, J., dissenting) (recognizing suit in equity under *Ex parte Young* for those "directly affected by the regulations they sought to enjoin"); *CNSP, Inc. v. Webber*, 2020 WL 2745456, at \*5-9 (D.N.M. May 27, 2020) (finding that neither *Armstrong* nor *Safe Streets Alliance* barred plaintiff's preemption claims in equity under *Ex parte Young*). *Contra* Br. 23-27. Right or wrong, *Safe Streets Alliance* merely held that the plaintiffs there were not directly regulated. 859 F.3d at 896 (plaintiffs "only alleged injuries concern property

damage and emotional harms"); *id.* at 907 (alleging injury to "individual professional aspirations"); *see also* JA299-302 (distinguishing *Safe Streets Alliance*).

Oklahoma suggests that *Ex parte Young* is limited to cases where "the person has federal 'rights' that he cannot be forced to give up through a threat of state prosecution" and that the INA confers no such rights on Plaintiffs. Br. 25-26 (citing *Safe Streets Alliance*, 859 F.3d at 906 n.19). But that is flat wrong, as "the Supreme Court has permitted an *Ex parte Young* claim where plaintiffs alleged only that a state's regulatory actions violate federal law—preemption included." JA301 n.7 (citing *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002)); *see Iowa*, 2025 WL 2984379, at *6 (similar). Accordingly, courts routinely allow plaintiffs to assert a cause of action in equity to challenge preempted laws without demonstrating the sorts of "federal 'rights'" that Oklahoma claims are necessary. *See, e.g.*, *Crown Castle Fiber, L.L.C. v. City of Pasadena*, 76 F.4th 425, 434-35 (5th Cir. 2023) (plaintiffs have "a cause of action . . . *at equity*" to seek "relief on preemption grounds" even where the relevant federal statute "does not confer a private right" (cleaned up)); *Texas*, 144 F.4th 661-62; *GLAHR*, 691 F.3d at 1261-62; *Valle del Sol*, 732 F.3d at 1029; *Lozano*, 724 F.3d at 323.

To the extent that *Safe Streets Alliance* held that a suit in equity can proceed only if a plaintiff has a "federal right of her or his own to vindicate" in the statute at

issue, 859 F.3d at 902, 903, it misinterprets *Armstrong* and its ruling should not be extended here. *See* 859 F.3d at 914-18 (Hartz, J., concurring). In *Armstrong*, the Court reaffirmed that, as a general matter, federal courts of equity can enjoin unlawful executive action—including violations of the Supremacy Clause by state officials. 575 U.S. at 326-27. It analyzed the availability of a *private cause of action* (and associated claim under 42 U.S.C. § 1983) by looking for "rights-creating language." 575 U.S. at 330 n.\*, 331-32 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). But it separately examined the availability of an equitable claim, explaining that such a cause of action presumptively exists unless Congress acts affirmatively to "preclude the availability of equitable relief." *Id*. at 327-28. Nowhere in this portion of its opinion did the Court suggest that a party seeking injunctive relief from a preempted law must first identify a federal substantive right when invoking federal courts' equity power. But in any event, *Safe Streets Alliance* made clear that rights-creating language—the touchstone of a statutory cause of action—is *not* necessary where a plaintiff challenges a statute that regulates them directly. *See* 859 F.3d at 892 n.5, 906 n.19; *see also Murphy*, 584 U.S. at 478-79 (preemption itself gives plaintiffs a "federal right").

Next, Oklahoma contends that, even if Plaintiffs can bring these claims, the INA forecloses equitable relief. Br. 27-29. But it comes nowhere near the robust showing the Supreme Court has required to displace the longstanding availability of

equity.

*Armstrong*, for example, found that Congress had precluded such relief only because (1) Congress had created an explicit and exclusive enforcement mechanism, *and* (2) the federal rule in that case was too vague for judicial administration. *See* 575 U.S. at 326-29. Both of these conditions were necessary, *see id.* at 328, and neither is satisfied here. *See FWAF*, 2025 WL 775558, at *10-15, *11 n.6 (exhaustively rejecting this argument and collecting cases).

The INA contains no exclusive remedial scheme that would displace equitable relief. Unlike in *Armstrong*, where Congress had provided an explicit remedy for the specific kind of quasi-contractual violation the plaintiff alleged, the INA does not provide any "specific remedy"—much less an exclusive one—for state laws that intrude on the federal scheme. *FWAF*, 2025 WL 775558, at *13 (quoting *Armstrong*, 575 U.S. at 328).

Likewise, the standard invoked here—that federal law displaces conflicting state law—is not "judicially unadministrable" like the broad, nonspecific standards at issue in *Armstrong*. *See* 575 U.S. at 328. The rule here is simple and longstanding: States may not criminalize entry or reentry into the United States. *See Arizona*, 567 U.S. at 406-10. Plaintiffs do not seek to enforce 8 U.S.C. §§ 1325, 1326, or any other provision of the INA regulating private conduct. Br. 29; *cf. Isr. Aircraft Indus. Ltd. v. Sanwa Bus. Credit Corp.*, 16 F.3d 198, 199 (7th Cir. 1994) (cited by Oklahoma)

(effort to enforce federal anti-boycott statute). Rather, they invoke the Supremacy Clause's "rule of decision"—the settled principle that federal law displaces conflicting state law. *See Murphy*, 584 U.S. at 477, 479; *Armstrong*, 575 U.S. at 324.

Oklahoma asserts that language disclaiming a right to sue under *other* immigration provisions "plainly indicates that no cause of action exists." Br. 28. But that does not follow at all; if anything, such provisions confirm that Congress knows how to preclude suit when it wants to, but it did not do so as to preemption challenges to state immigration laws. As for the State's reliance on the INA's criminalization of unlawful entry and reentry, no Court has precluded equitable relief based on such flimsy evidence. *See* JA302-04; *cf. Seminole Tribe v. Florida*, 517 U.S. 44, 74-76 (1996) (cited by Oklahoma, Br. 27) ("Congress ha[d] prescribed a detailed [and exclusive] remedial scheme" under challenged statute).[4]

Finally, Oklahoma argues that Plaintiffs cannot bring a pre-enforcement challenge to H.B. 4156 and must instead raise preemption as a defense in a criminal proceeding. Br. 30. But Plaintiffs need not expose themselves to prosecution to challenge a preempted state law. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge

---

[4] *M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1253 (10th Cir. 2024), Br. 28, involved an action to enforce provisions of the Medicaid Act that expressly created a private right and is irrelevant here.

the basis for the threat—for example, the constitutionality of a law threatened to be enforced"). Plaintiffs satisfy *Ex parte Young*'s exception to sovereign immunity as they seek prospective relief against Defendants, who are state officers, and who have "a demonstrated willingness" to "enforce" H.B. 4156. *Frank v. Lee*, 84 F.4th 1119, 1132 (10th Cir. 2023) (citation omitted); *see also Edmondson*, 594 F.3d at 760 (permitting pre-enforcement, preemption suit). Equitable preemption challenges just like this one have deep roots, *see Armstrong*, 575 U.S. at 327 (noting the "long history of judicial review of illegal executive action, tracing back to England"), and are a mainstay of federal courts' vital role policing the federal-state boundaries so central to our constitutional structure, *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983); *GLAHR*, 691 F.3d at 1260-62.

* * *

Plaintiffs also have a cause of action under § 1983 for their Commerce Clause claim. *See Dennis v. Higgins*, 498 U.S. 439, 446 (1991) ("the Commerce Clause confers 'rights, privileges, or immunities' within the meaning of § 1983"). Oklahoma's argument to the contrary is meritless, and all of the cases it cites involve statutory—not constitutional—claims. Br. 29; *see Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2229 (2025) (discussing standard for when "a statute secures an enforceable right," which is true only in "atypical cases").

21

## III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

The district court rightly held that H.B. 4156 is likely field and conflict preempted. JA306-10. In reaching that conclusion, it joined the unanimous judgment of every other court to have considered other such laws. JA211 (collecting cases).[5] Nothing that Oklahoma offers on appeal can avoid the law's patently unlawful usurpation of federal authority over immigration.

### A.   H.B. 4156 Is Field Preempted

Field preemption may be inferred from either a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it.'" *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). When it comes to entry, both tests are satisfied.

---

[5] Oklahoma attempts to distinguish these cases as "brought by the federal government, . . . which has since abandoned its position." Br. 36 n.12. That is incorrect: the Idaho and Florida actions were brought exclusively by private plaintiffs. *IORC*, 780 F. Supp. 3d at 1052; *Florida*, 780 F. Supp. 3d at 1277; *see also Uthmeier v. Fla. Immigrant Coal.*, 145 S. Ct. 2872 (2025) (denying stay of Florida injunction after the federal government withdrew its case in Oklahoma); *Fla. Immigrant Coal. v. Att'y Gen.*, 2025 WL 1625385, at*6 (11th Cir. June 6, 2025) (same). Likewise, the Fifth Circuit affirmed the *Texas* injunction after the United States withdrew, *see* 144 F.4th at 688. The same is true of *Iowa*. 2025 WL 2984379, at *1. While the *Texas* decision has been taken en banc, the state's leading argument in its petition addressed organizational standing, *see* Pet. for Reh'g En Banc, *U.S. v. Texas*, No. 24-50149 (5th Cir. filed July 31, 2025), Dkt. No. 306.

Courts have recognized "an overwhelmingly dominant federal interest" in the field of "*entry*, movement, and residence of [noncitizens] within the United States." *GLAHR*, 691 F.3d at 1264. That interest is rooted in settled precedent: "For nearly 150 years, the Supreme Court has recognized that the power to control immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power." *Texas*, 144 F.4th at 667 & n.267 (collecting cases); JA313 (same); *see Chy Lung*, 92 U.S. at 280 ("The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States."); *Arizona*, 567 U.S. at 409 ("Policies pertaining to the entry of aliens and their right to remain here are entrusted exclusively to Congress." (cleaned up)).

Consistent with this dominant federal interest, "Congress has legislated so comprehensively in the field of [noncitizen] entry . . . that it left no room for supplementary state legislation." *Texas*, 144 F.4th at 677 (cleaned up). Indeed, the INA's "'central concern' is the 'entry and stay of [noncitizens]' in the United States." *Texas*, 144 F.4th at 668 (citing *DeCanas v. Bica*, 424 U.S. 351, 359 (1976)). It contains detailed rules governing who may enter the country. *See, e.g.*, 8 U.S.C. §§ 1153, 1184. For those who enter without authorization, Congress has established a comprehensive set of enforcement mechanisms: it has criminalized entry and reentry between ports of entry, 8 U.S.C. §§ 1325, 1326, as well as efforts to assist or facilitate entry between ports, 8 U.S.C. §§ 1323, 1324, 1327, 1328, 1329. Congress

23

has also provided a detailed set of standards and procedures for when individuals who enter without inspection may be arrested and detained by federal officials. *See, e.g.*, 8 U.S.C. §§ 1225(b), 1226(a)-(c), 1182(d)(5)(A). Congress has also provided defenses to removal available regardless of irregular entry—many of which may lead to permanent immigration status and even citizenship. *See* 8 U.S.C. §§ 1158, 1231(b)(3), 1101(a)(15)(U), (T).

Broad discretion is "[a] principal feature" of the immigration system, and absolutely central to Congress's scheme, which allows federal immigration officials to determine whether detention or prosecution best serves national interests. *Arizona*, 567 U.S. at 396; *see Iowa*, 2025 WL 2984379, at *7 (collecting cases); *Texas*, 144 F.4th at 671. Federal prosecutors and immigration officials are empowered to deploy or forgo criminal charges or civil proceedings to ameliorate the potential harshness of the immigration laws. *See Arizona*, 567 U.S. at 396, 402, 409; *Texas*, 599 U.S. at 679. And their discretion "implicates not only normal domestic law enforcement priorities but also foreign-policy objectives." *Texas*, 599 U.S. at 679 (cleaned up).

For all the reasons the Supreme Court held a state noncitizen registration statute field preempted in *Arizona*, Oklahoma's noncitizen entry law must also fall.[6]

---

[6] To the extent Oklahoma argues "*Arizona* . . . should be overruled or narrowed[,]" that must be decided, as Oklahoma concedes, "by the Supreme Court." Br. 36; *but see Uthmeier v. Fla. Immigrant Coal.*, 145 S. Ct. 2872 (2025) (denying stay of injunction of analogous Florida law, without noted dissent).

24

JA307 & n.12. Indeed, if laws like H.B. 4156 "were valid, every State could give itself independent authority to prosecute federal [entry] violations, diminishing the Federal Government's control over enforcement[,] . . . detracting from the integrated scheme of regulation created by Congress," and allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402 (cleaned up). That risk is not hypothetical. Seven states have enacted their own entry laws like H.B. 4156, and eighteen states have submitted an amicus brief in this case, underscoring that Oklahoma's position would lead to an unmanageable patchwork of varying state regulations of immigration. *See* Dkt No. 42.

As an initial matter, no presumption against preemption applies because entry and removal are an area of dominant—indeed, exclusive—federal interest, and because of longstanding exhaustive federal regulation in this area. *Cf.* Br. 16; *see U.S. v. Locke*, 529 U.S. 89, 90 (2000); *Lozano*, 724 F.3d at 297 (declining to apply presumption against preemption to state immigration laws); *Iowa*, 2025 WL 2984379, at *3 (similar).

Next, Oklahoma's attempt to cabin *Arizona* to noncitizen registration is unavailing. "*Arizona*'s logic . . . naturally extends to H.B. 4156." JA307 n.12 (cleaned up); *see also Texas*, 97 F.4th at 279-82 (noting that everything the Supreme Court said about registration applies with even greater force "to the sensitive topic

of noncitizens entering the country"). The federal government's power "to forbid the entrance of foreigners" is, if anything, even more uniquely federal, as it is "inherent in [the] sovereignty" of the United States as a nation. *Nishimura Ekiu v. U.S.*, 142 U.S. 651, 659 (1892); *see Fong Yue Ting v. U.S.*, 149 U.S. 698, 711 (1893). The federal scheme governing entry is even more "extensive and complex" than the registration scheme and more significantly implicates "foreign relations." *Arizona*, 567 U.S. at 395-97 (citing *Hines*, 312 U.S. at 64); *see id.* at 400-02. If a state cannot punish immigrants for failing to fill out registration paperwork, surely it cannot regulate entry directly.

Oklahoma seeks to save H.B. 4156 by arguing that it does not regulate "entry and reentry in the United States as a whole" and "is solely concerned with [Oklahoma's] own borders." Br. 34, 35. That is simply not true. H.B. 4156 is a conceded attempt to create a direct state analogue to the federal entry and reentry crimes. Br. 8 ("HB 4156 creates an Oklahoma criminal analogue to federal criminal illegal entry and reentry."). The key elements of its crimes are all about entry into the United States. *See* H.B. 4156 § 2(B) (defining entry violation with reference to not having "obtained legal authorization to enter the United States"); § 2(D) (defining reentry crime with reference to prior removal from the United States and presence without permission to reenter the United States). It thus plainly *does* regulate entry and reentry into the United States. The fact that it also addresses

26

presence in Oklahoma is irrelevant— little more than a jurisdictional hook for prosecution by the State. *See, e.g.*, *Hines*, 312 U.S. at 59-69 (state law solely concerned with registration of noncitizens in Pennsylvania was nonetheless preempted by comprehensive federal scheme); *Hines v. Davidowitz*, 30 F. Supp. 470, 474 (1939) (law "place[d] conditions upon the right of an alien to reside in" the state); *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1322, 1327 (10th Cir. 2010) (New Mexico licensing law regulating sale of alcohol "to travelers on … airplanes within the state" was preempted because it "directly implicate[d] the field of aviation safety regulated by federal law"); *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 308-09 (1988) (rejecting "state law whose central purpose is to regulate matters that Congress" reserved for federal government).[7]

In any event, even state laws that *indirectly* regulate entry and presence are preempted. *See, e.g.*, *U.S. v. Alabama*, 691 F.3d 1269, 1294-95 (11th Cir. 2012) (state law limits on noncitizens' ability to enter into contract were "preempted by the inherent power of the federal government to regulate immigration"); *Lozano*, 724 F.3d at 315-18 (preempted municipal housing regulations were "thinly veiled attempt to regulate residency" even though they did not "control actual, physical entry into, or expulsion from [the City] or the United States"). H.B. 4156 is an even

---

[7] Even if Oklahoma had enacted such a statute that only regulated entry and reentry into the State, it would still violate the Commerce Clause. *See infra* Part III.B.

greater intrusion into the federal scheme because it *directly* criminalizes entry and reentry by certain noncitizens.

Nor is it a defense that H.B. 4156 "neither extends federal law nor criminalizes something not already federally criminal." Br. 35. In a preempted field like this, states may not legislate even if they have "the same aim as federal law and adopt[] its substantive standards." *Arizona*, 567 U.S. at 402. In any event, the premise is untrue: H.B. 4156 includes harsher penalties for state law violations than the INA provides for the equivalent federal violations. JA194-96; *compare* H.B. 4156 §2(C) (first-time conviction for impermissible occupation punishable by imprisonment for *up to one year*, subsequent conviction for *up to two years*), *with* 8 U.S.C. § 1325(a) (*maximum* sentence of six months). Those "inconsistenc[ies] . . . with respect to penalties" further "underscore the reason for field preemption." *Arizona*, 567 U.S. at 402-03.

Oklahoma also claims that the federal government's authority to "legalize" noncitizens does not displace the State's "police power to exclude *illegal* aliens." Br. 34. But neither *Arizona* nor the INA draws such a distinction. The preempted statute at issue in *Arizona* applied *only* to people who were not lawfully present in the country. *Florida*, 780 F. Supp. 3d at 1261; *see* Ariz. Rev. Stat. § 13-1509(F) (statutory exception for noncitizens who have federal authorization to remain in the U.S.). And significant portions of the INA pertain to the arrest, detention,

28

prosecution, and removal of noncitizens who have entered the country without authorization. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1229a, 1231, 1325, 1326. Regardless, H.B. 4156 could very well lead to individuals with status being rounded up, and Oklahoma is aware of this risk. *See, e.g.*, Floor Amendment No. FA2 to H.B. 4156, 59th Leg. (Sen. Brooks) (Okla. Apr. 22, 2024) (amendment would have allowed U.S. citizen, national, or legal permanent resident wrongfully arrested to bring civil action for damages). Indeed, a United States citizen was arrested under Florida's analogue to H.B. 4156. *See Florida*, 780 F. Supp. 3d at 1265.

Finally, Oklahoma relies heavily on cases regarding state regulations that concern fields far removed from the quintessentially preempted field of noncitizen entry and presence. Br. 33-36.

Oklahoma cites *Plyler v. Doe*, which concerned an equal protection challenge to a Texas law restricting education for undocumented children. Br. 33-34. The Supreme Court held that the state restrictions were unlawful, and repeatedly emphasized that states have "no direct interest in controlling entry into this country, that interest being one reserved by the Constitution to the Federal Government." *Plyler*, 457 U.S. at 225, 228 n.23. *DeCanas* likewise emphasized that the "[p]ower to regulate immigration is unquestionably a federal power" and involved an employment law that had a "purely speculative and indirect impact on immigration." 424 U.S. at 354-55. Unlike H.B. 4156, the law in *DeCanas* did not implicate the

"central concern of the INA"—namely, "the terms and conditions of admission to the country." *Id*. at 355, 359; *see also Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 604 (2011) (upholding state noncitizen employment law in part because "[r]egulating in-state businesses through licensing laws has never been" an "area of dominant federal concern").

*Kansas v. Garcia*, 589 U.S. 191 (2020), which Oklahoma mischaracterizes as pertaining to state prosecutions regarding "work authorization," Br. 35, in fact involved prosecutions of noncitizens under a generally applicable state identity theft statute for using fraudulent social security numbers on tax withholding forms. 589 U.S. at 195, 198-99. The noncitizens sought to rely on the fact that, "upon beginning a new job," tax withholding is typically conducted alongside employment verification—the latter of which is related to the overall immigration system. *Id.* at 197, 208-09. The Supreme Court considered various formulations of the proposed field, ultimately rejecting all of them on essentially the same grounds: "The submission of tax[-]withholding forms is fundamentally unrelated to the federal employment verification system." *Id.* at 208. Here, H.B. 4156 directly refers to entry into the United States in the definition of its crimes, unlike the glancing relevance of state tax withholding to immigration matters in *Kansas*. *See* JA08-10 (rejecting Oklahoma's reliance on *Kansas*); *Texas*, 144 F.4th 685-86 (same); *Iowa*, 2025 WL 2984379, at *9 (same); *Florida*, 780 F. Supp. 3d at 1263-64*.

30

And *Kansas* certainly does not support Oklahoma's proposition that the new administration's support for H.B. 4156 now renders it a permissible state regulation of entry. Br. 35-36; *see Iowa*, 2025 WL 2984379, at *10 (rejecting similar argument). "Congress's intent—not the shifting enforcement priorities of presidential administrations—controls the preemption inquiry." JA209 (collecting cases); *see also Kansas*, 589 U.S. at 212. The "views" of "an Executive Branch agency" do not control the meaning of Congress's statutes. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). That is particularly so because the amicus submitted by the Department of Justice is an abrupt reversal from the position it took just last year—a fact it neither acknowledges nor explains. *See id.* at 386 ("respect" for "consistent" views); Br. for the United States, *U.S. v. Oklahoma*, No. 24-6144 (10th Cir. filed Nov. 20, 2024). Accordingly, the Supreme Court has held state laws preempted even when a given administration believes they are not. *See, e.g.*, *Zschernig v. Miller*, 389 U.S. 429, 434 (1968); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 551, 546-47 (2001); *cf. Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497 (2010) ("the separation of powers does not depend on the views of individual Presidents").

### B.    H.B. 4156 Creates an Unlawful Scheme of State Expulsion

H.B. 4156's criminalization of entry and reentry is enough to render the law preempted. If those crimes are enjoined, the remaining provisions of the law must

fall because they have no independent effect. *See* JA184-85.

However, H.B. 4156 is a further "intrusion into a federal domain" because it banishes noncitizens from Oklahoma. JA029. The law requires anyone convicted of an entry or reentry crime to leave the State within 72 hours of completing their sentence. *See* H.B. 4156 §§ 2(C)(1), (2); 2(D). This threatens to banish thousands of asylum seekers, visa applicants, and others who have a federal right to remain in the United States, *see* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1231(a)(1)(A), in any state, including Oklahoma, *see* 8 U.S.C. § 1229(a)(1)(F)(i) (allowing noncitizens to specify their address anywhere in the United States), and whom the federal government may grant lawful status, permanent residence, and citizenship.

Oklahoma barely attempts to defend this provision of the law, Br. 9, and for good reason. "The power to expel aliens has long been recognized as an exclusively federal power." *Alabama*, 691 F.3d at 1293; *see Arizona*, 567 U.S. at 409 ("[T]he removal process is entrusted to the decision of the Federal Government."). Congress has provided a detailed set of standards and procedures to determine whether a noncitizen may remain in the United States. *See, e.g.*, 8 U.S.C. §§ 1225, 1229, 1229a, 1158, 1231(b)(3); *Iowa*, 2025 WL 2984379, at *8, 11 (discussing removal statutes). This leaves no room for states to enact their own expulsion schemes and choose for themselves which noncitizens can remain within their borders.

It is of no moment that H.B. 4156 expels noncitizens from the State rather

than the United States. Br. 9, 32. Such a "policy of expulsion" still "conflicts with Congress's comprehensive statutory framework governing alien removal." *Alabama*, 691 F.3d at 1293-95. As explained above, even indirect regulations of noncitizen presence are preempted. *Id.* H.B. 4156 goes further because it mandates the *actual* banishment of individuals convicted under the statute. H.B. 4156 §§ 2(C)(1)-(2). Oklahoma has unilaterally decided that certain noncitizens simply "cannot be tolerated within its territory, without regard for" the "comprehensive statutory framework" Congress enacted governing removal and permission to remain in the country. *Alabama*, 691 F.3d at 1294-95.

If every state could choose for itself which categories of noncitizens to banish from their state, the result would be a chaotic patchwork of 50 separate immigration systems, where states would unilaterally decide which immigration statuses were permissible within their borders. *Compare, e.g.*, Tex. S.B. 4, 88th Leg., 4th Spec. Sess. (Tex. 2023) (affirmative defenses for, e.g., asylees and DACA recipients), *and* Fla. S.B. 4-C, § 4, 2025C Leg. (Fla. 2025) (similar for Cuban Adjustment Act eligibility), *with* Iowa S.F. 2340, 90th Gen. Assemb. (Iowa 2024) (providing for no "defenses"). This would "threaten the uniform application of the INA," severely burden federal operations, and erode federal control over immigration and foreign relations. *GLAHR*, 691 F.3d at 1266. And if each state adopted a similar policy, the cumulative effect would be removal from the United States. "[T]he immigration

scheme would be turned on its head." *Alabama*, 691 F.3d at 1295 n.21.

### C.    H.B. 4156 Conflicts with Federal Immigration Law

The district court correctly held that H.B. 4156 is also conflict preempted. JA209-11, 308-10. The statute strips away federal discretion, authorizes unilateral state action, and creates inconsistencies with federal law. *See Iowa*, 2025 WL 2984379, at *8 (similar law posed "an obstacle to the exercise of the discretion that Congress gives federal officials charged with enforcing federal immigration law") (collecting cases). By creating new state crimes that overlay and expand upon federal illegal entry and reentry provisions—and by empowering Oklahoma officials to arrest, detain, prosecute, and expel individuals under those laws—Oklahoma "has assumed a role in enforcing federal immigration law that Congress has not assigned to it." *Texas*, 97 F.4th at 289.

1.    H.B. 4156 frustrates Congress's statutory scheme by undermining the "broad discretion" entrusted to federal immigration officials. *Arizona*, 567 U.S. at 396; *see Iowa*, 2025 WL 2984379, at *8; *Texas*, 97 F.4th at 289; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (state sanctions law preempted where it was "obstacle to the accomplishment of Congress's full objectives under the federal [statute]," including "its delegation of effective discretion to the President"). As already explained, federal immigration officials may choose among various tools for responding to unlawful entry, including criminal prosecution under

34

8 U.S.C. §§ 1325 and 1326, civil removal proceedings, and discretionary forms of relief. *Arizona*, 567 U.S. at 395-96, 409. These tools allow the federal government to balance complex and interrelated domestic and international policies and priorities, and Congress made clear that those choices must remain exclusively federal. *See id.* at 408; *Iowa*, 2025 WL 2984379, at *9; *Texas*, 599 U.S. at 679.

H.B. 4156 jettisons this careful balance that federal discretion is meant to ensure. It empowers Oklahoma to unilaterally initiate prosecutions "against individuals for violating a federal law even in circumstances where federal officials in charge of the comprehensive scheme determine that the prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402; *see Texas*, 144 F.4th at 676; *GLAHR*, 691 F.3d at 1265. Even if federal officials conclude that a particular prosecution or set of prosecutions would harm relations with a foreign country, or would undermine humanitarian protections, or jeopardize a "criminal investigation," or conflict with our international obligations, such considerations can be cast aside. *Arizona*, 567 U.S. at 396-97, 408 (citing these as reasons why unilateral state action is preempted); *Iowa*, 2025 WL 2984379, at *9.

Consider the case of Plaintiff Coe, who has a pending green card application. Under H.B. 4156, Oklahoma could prosecute, convict, and banish him from the State even if the federal government will ultimately decide to grant him lawful permanent resident status—and even eventual citizenship. JA072-73, ¶¶ 6-7. Or consider Padres

35

Unidos member Moe, who has four U.S.-citizen children and a pending U-visa application. JA078, ¶ 11. H.B. 4156 would allow Oklahoma to banish him from the State even if federal officials determine that he should not be removed because of the hardship that would befall his U.S. citizen children if he were removed. *See* 8 U.S.C. § 1229b(b)(1); *see also* JA084-85, ¶ 14 (LULAC-OKC member Soe has U.S.-citizen wife and son and pending application for lawful permanent residence under the Violence Against Women Act). While the federal system requires careful consideration by federal agents of the equities involved in such cases, H.B. 4156 seizes that decision for state officers, who will get to decide whether noncitizens are arrested and charged with a crime. "This is not the system Congress created." *Arizona*, 567 U.S. at 408.

Oklahoma contends that recognizing conflict preemption here would amount to saying "that federal criminal law preempts state law whenever they overlap." Br. 38 (citing *Kansas*, 589 U.S. at 212). But the INA implicates uniquely weighty federal interests that arise in the context of entry and reentry. *See Iowa*, 2025 WL 2984379, at *9 (rejecting this argument and reliance on *Kansas* because "[i]mmigration is not a traditional subject of state regulation"); *Texas*, 144 F.4th 685-86 (same). Federal officials may need to balance multiple competing priorities, foreign relations, humanitarian considerations, and practical resource constraints. *Arizona*, 567 U.S. at 396-97, 408; JA210. These decisions involve "significant complexities" in

determining a noncitizen's immigration status and the federal government's interests, but H.B. 4156 "runs roughshod over them." *Texas*, 144 F.4th at 685-86 (citing *Arizona*, 567 U.S. at 409). Thus, unlike the identity fraud prosecutions in *Kansas*, which did not "threaten[] serious disruption" of the federal system, 589 U.S. at 208, H.B. 4156 "frustrate[s] . . . federal interests" by asserting state control in lieu of a comprehensive federal system in which Congress "made a considered decision" to place discretion in the hands of federal officials. 589 U.S. at 212; *see Crosby*, 530 U.S. at 374-380.

2.     Oklahoma additionally contends that "H.B. 4156 does not criminalize under Oklahoma law anything that is not already criminal under federal law." Br. 39. But this misses the point. H.B. 4156 allows Oklahoma to "achieve its own immigration policy" by permitting the State to unilaterally prosecute entry and reentry violations. *Arizona*, 567 U.S. at 408; *Iowa*, 2025 WL 2984379, at *9. This contradicts the core teaching of *Arizona* that undergirds every part of its analysis: States cannot enforce federal immigration law on their own, without federal "direction and supervision." *Id*. at 413.

Section 6 of the challenged Arizona law, which, like H.B. 4156, allowed state officers to make warrantless arrests of noncitizens, was preempted because it allowed "unilateral state action" that disregarded the "significant complexities involved in enforcing federal immigration law" and usurped the federal

37

government's ability to exercise discretion. *Arizona*, 567 U.S. at 407-10. Section 3, the provision criminalizing failure to register, was similarly preempted because, like H.B. 4156, it allowed unilateral state prosecutions for what were effectively violations of federal law. Such "independent authority to prosecute" would "diminish the federal government's control over enforcement," upend the "careful framework Congress adopted," and "frustrate federal policies." *Id*. at 402 (cleaned up). And Section 2(B), which directed state police officers to contact immigration authorities during traffic stops, would have been preempted if it allowed unilateral detention "without federal direction and supervision." *Id*. at 413. Far from addressing "a narrow exception" limited to "alien registration," Br. 38, *Arizona* broadly prohibits unilateral state immigration enforcement.

Oklahoma seeks to downplay this unilateral state action by claiming that "effective implementation of H.B. 4156 will likely require meaningful cooperation with federal authorities." Br. 38, 39. That is beside the point. Immigration is federal business, and so "the United States need not depend on the *noblesse oblige* of the states" offering likely cooperation in a state immigration system. *Iowa*, 2025 WL 2984379, at *13. Moreover, nothing in the text of H.B. 4156 suggests that the federal government—and not the State—will determine to whom the law applies. To arrest, prosecute, detain, and banish people under H.B. 4156, *state* officials will have to decide whether "the federal government has granted . . . lawful presence in the

38

United States." H.B. 4156 § 2(F)(1)(a).

Neither federal law nor *Arizona* even remotely invites states to set up their own criminal immigration schemes. To be sure, federal law provides limited permission to state officers to "cooperate" and "communicate" with federal agents. *See Arizona*, 567 U.S. at 410-12; *see also Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 (1983) (noting that Congress can occupy a field even where it "expressly cede[s]" certain "limited powers to the states"). But these limited permissions are "not a grant of authority to a state to enact a statute making it a state crime to be unlawfully present." *Texas*, 144 F.4th at 683. Indeed, "no coherent understanding of the term [cooperate] would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government." *Arizona*, 567 U.S. at 410; JA209-10.[8]

---

[8] Nor is there any truth to Oklahoma's assertion that "the 'federal scheme' 'leaves room' for enforcement of a state law like HB 4156." Br. 38-39 (citing *Arizona*, 567 U.S. at 412-13). The statutes it cites involve domestic conduct and at most give states a small and peripheral role in assisting federal enforcement. Oklahoma "fails to explain how these laws are relevant to the entry" and reentry provisions of H.B. 4156. *Texas*, 97 F.4th at 287; *id*. at 286-87 (rejecting nearly identical argument); *Iowa*, 2025 WL 2984379, at *10 (same); *see* 8 U.S.C. § 1357(g)(1)-(10) (subjecting state officers to federal control and discretion); *see also* 18 U.S.C. § 758 (addressing state assistance in pursuing fleeing vehicles fleeing checkpoints, which are typically not at the border); 22 U.S.C. § 7105(c)(3)(C)(i) (addressing trafficking, which often involves purely domestic conduct, *see* 18 U.S.C. § 1590); 8 U.S.C. § 1101(a)(15)(T)(i) (same); 8 U.S.C. § 1101(a)(15)(U)(iii) (similar).

### D.     Oklahoma's Invasion Defense is Meritless

In a last-ditch attempt to save the statute, Oklahoma advances a sweeping argument that it may disregard federal law and take immigration into its own hands under the State War Clause of the Constitution, Article I, Section 10, Clause 3. Br. 40-42. The district court was correct to reject this, pointing out that "[n]either the Supreme Court nor the Tenth Circuit has recognized" this sweeping argument. JA038, 211-12, 290-91. Indeed, *no* court has accepted this breathtaking assertion of state supremacy, which would give states a blank check to disregard Congress and federal authority and "enact and enforce state legislation regulating immigration otherwise preempted by federal law." *Texas*, 97 F.4th at 295; *id*. (rejecting Texas's invasion defense and explaining "that federal statutes addressing matters such as noncitizen entry and removal are still supreme even when the State War Clause has been triggered"); *U.S. v. Texas*, 719 F. Supp. 3d 640, 679-94 (W.D. Tex. 2024), *vacated*, 144 S. Ct. 797 (2024); JA038-39 (citing cases that have "rejected application of the State War Clause in the context of immigration").

Oklahoma argues that the current administration proclaiming an "invasion" saves the State's unsanctioned use of the invasion defense, Br. 42, but the federal government's declaration of "'invasion' as a matter of policy" does not negate the fact that the "historical and constitutional context of the State War Clause does not support its use as a defense for legislation like H.B. 4156." JA212 (citing *Oklahoma*,

739 F. Supp. 3d at 1005 (collecting cases)).

* * *

Oklahoma urges this Court to "enjoin only unconstitutional applications" of the law. Br. 49, 4 (citing *U.S. v. Salerno*, 481 U.S. 739 (1987)). But it identifies no valid applications, and there are none. "Of course, if a law intrudes on a field occupied by Congress, every application of that law is preempted." *Texas*, 144 F.4th at 663. And in every case, H.B. 4156 disrupts Congress's design by removing federal discretion and control and permitting unilateral state enforcement. *See Iowa*, 2025 WL 2984379, at *13 ("every application of the Act stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *Texas*, 144 F.4th at 644. Even if Oklahoma could hypothesize a valid application—which it has not—*Arizona* found facial preemption despite just such arguments. *See* 567 U.S. at 408-10; *U.S. v. Supreme Ct. of New Mexico*, 839 F.3d 888, 917 (10th Cir. 2016) (questioning *Salerno*'s application to facial preemption challenge). Nor is H.B. 4156 severable. Br. 49. If the substantive entry and reentry crimes provisions are enjoined, the remaining provisions are also invalid because they have no independent effect. JA185.

### E.    H.B. 4156 Violates the Commerce Clause

Not only is H.B. 4156 preempted, but its restriction on interstate movement and authorization of expulsion from the state also runs afoul of the Commerce

41

Clause. U.S. Const. art. I, § 8, cl. 3.[9]

The dormant component of the Commerce Clause prevents a State from passing laws that discriminate against interstate commerce. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (citation omitted); *see also Ore. Waste Sys., Inc. v. Dep't of Env't Quality of Ore.*, 511 U.S. 93, 99 (1994). "The clearest example of [discriminatory] legislation is a law that overtly blocks the flow of interstate commerce at a State's borders." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see Covington & C. Bridge Co. v. Commonwealth of Kentucky*, 154 U.S. 204, 217 (1894) (state could not unilaterally regulate interstate bridge). And such commerce "encompasses the movement in interstate commerce of *persons* as well as commodities." *U.S. v. Guest*, 383 U.S. 745, 758-59 (1966) (emphasis added); *see Covington*, 154 U.S. at 217 (applying Commerce Clause to foot traffic across bridge, regardless of where travelers lived). Thus, in *Edwards v. California*, the Supreme Court held that the Commerce Clause was violated where California attempted to "fenc[e] out indigent immigrants"—that is, people seeking to move there from out of state. *City of Philadelphia*, 437 U.S. at 627 (citing *Edwards*, 314 U.S. 160, 173-74 (1941)).

---

[9] The district court did not reach any issues related to the Commerce Clause. JA211 n.11. However, this Court can affirm on any ground supported by the record, and no cross-appeal is necessary. *See Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir. 1988); *contra* Br. 13 n.11.

Similarly, H.B. 4156 "overtly blocks the flow of interstate commerce at a State's borders" by banning noncitizens who irregularly entered the United States from the State of Oklahoma. *Id.* at 624. It reinforces this ban by forcing noncitizens convicted under the statute to leave the state within three days. "The burden upon interstate commerce is intended and immediate:" those convicted under the law "cannot remain in Oklahoma" and must "relocate to another State." *Edwards*, 314 U.S. at 174. This is impermissible under the Commerce Clause.

Oklahoma cannot "isolate itself from difficulties common to all" states by penalizing certain noncitizens for crossing state lines and expelling them from the State into other states. *Id.* at 173. Such barriers against the movement of people at Oklahoma's borders are an "open invitation to retaliatory measures" by other states. *Id*. And if all 50 states were to enact such laws, the burdens on interstate commerce would become "cumulative" and it would be a "virtual impossibility" for certain noncitizens to reside anywhere in the United States. *Id*. Because H.B. 4156 discriminates against interstate commerce by banning certain categories of immigrants from entering Oklahoma, and expelling them upon conviction, it is "virtually per se invalid" under the Commerce Clause. *Ore. Waste Sys., Inc.*, 511 U.S. at 99.

## IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING PLAINTIFFS TO PROCEED UNDER PSEUDONYM

District courts have broad discretion to authorize pseudonymity in cases

involving (1) matters of a "highly sensitive and personal nature," (2) "real danger of physical harm," (3) "or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). The district court did not abuse its discretion in granting Plaintiffs leave to proceed under pseudonyms, explaining that "requir[ing] them to litigate this matter under their real names would effectively place a target on their backs." JA197-99; *see also* JA310-12.

Oklahoma does not contest that Plaintiffs reasonably fear physical harm as a result of their involvement in this case, or that disclosure of their identities would invite the very injury complained of. Indeed, the State acknowledges that Plaintiffs may face retaliation from the federal government for participating in this case. Br. 44-45. Just this year, the federal government has levied retaliatory criminal charges against a noncitizen for asserting his due process rights, *see United States v. Abrego*, 2025 WL 2814712 (M.D. Tenn. Oct. 3, 2025), and detained and sought to remove students for their protected speech, *see Am. Ass'n of Univ. Professors v. Rubio*, 2025 WL 2777659 (D. Mass. Sept. 30, 2025). And state governments have attempted to shutter nonprofit organizations that assist immigrants. *See, e.g.*, Alejandro Serrano and Eleanor Klibanoff, "Texas Supreme Court gives initial win to Paxton in migrant shelter case," *Texas Tribune* (May 30, 2025), https://perma.cc/N66U-ZHZ4. "Plaintiffs should not be forced to choose between challenging H.B. 4156 and

exposing themselves to federal [and state] authorities." JA198. Immigration enforcement action that targets Plaintiffs *because* of their participation in this case is precisely the type of retaliatory conduct and physical danger that pseudonymity was designed to protect against. *See, e.g.*, *D.B.U. v. Trump*, 2025 WL 1101149, at *1 (D. Colo. Apr. 14, 2025); *Doe v. ICE*, 2024 WL 4389461 at *3 (D.N.M. Oct. 3, 2024) (permitting pseudonyms where plaintiffs faced risk of retaliation from immigration officials); *Doe v. Hobson*, 300 F.R.D. 576, 577 (M.D. Ala. 2014) (granting leave to proceed under pseudonyms in light of plaintiffs' fear "of the possibility of criminal prosecution or deportation, the attachment of social stigma, the annoyance of private harassment, and the potential threat of violence"); *Does v. Rodriguez*, 2007 WL 684114, at *2 (D. Colo. Mar. 2, 2007) (allowing plaintiffs to proceed pseudonymously where they faced "retaliat[ion]" "for their role in initiating and pursuing [a] criminal investigation").

Additionally, Plaintiffs reasonably fear retaliation from private parties, especially because immigration is a divisive issue in Oklahoma's political climate. *See Faith Action for Cmty. Equity v. Hawaii*, 2014 WL 320587, at *5 (D. Haw. Jan. 29, 2014) (allowing pseudonymity where plaintiffs' "fear of criminal prosecution . . . involved politically charged and controversial issues"); *Doe #1 v. Trump*, 785 F. Supp. 3d 575, 582 (D. Ariz. 2025) (similar, where plaintiff cited anti-immigrant sentiment as "encouraging private individuals" to harass and retaliate against her).

45

Anti-immigrant vigilante groups have proliferated in the state, and hate crimes have increased in recent years. *See* "Oklahoma," *U.S. Dep't of Just.*, https://perma.cc/5R4E-H6QF (hate crimes—80% of which are motivated by race, ethnicity, and ancestry—increased by 150% between 2022 and 2023); Aram Roston and Jim Urquhart, "At a restaurant in Oklahoma, white nationalist tells of their growing influence," *The Oklahoman* (Aug. 9, 2025), https://perma.cc/5NUW-SHAS; "'Let's Come Together': Moore Man Offers Message of Unity After Racist Incident at Local Gym," *News9* (Feb. 12, 2025, 4:58 AM), https://perma.cc/P9XS-FBQ5.

The individual stakes for Plaintiffs, should their identities be revealed, are high: Barbara Boe is a member of the LGBTQ community and has built a life in Tulsa free from the discrimination she fled in Mexico; Christopher Coe and his wife are seeking status because his wife was the victim of a crime, and he and his family fear retaliation should people find out about their cooperation with law enforcement. JA068-69, ¶¶ 6, 8; JA072-74, ¶¶ 7, 14. These private interests and threats of physical harm are significant factors in the Tenth Circuit's analytical framework. None of the cases that Oklahoma cites, Br. 44, involved the confluence of serious harms that Plaintiffs face here, including the disclosure of sensitive information regarding their immigration status, the threat of physical harm by private actors, or retaliation by the federal government. Any of these factors by itself would favor anonymity, but

46

together, the need for anonymity is overwhelming.

Moreover, the federal government is already aware of most Plaintiffs' and organizational members' presence and is considering applications of relief from them. *See supra* Part II.A. Far from "protecting Plaintiffs from the consequences of their federal lawbreaking," Br. 45, the grant of pseudonymity protects them from *retaliation*—by federal, state, and private actors—due to their participation in this litigation. *See Doe v. Noem*, 781 F. Supp. 3d 1055, 1063 (E.D. Cal. 2025) (finding "evidence regarding surging hate crimes" and "anti-immigrant messaging from White House" "sufficient to show that . . . plaintiff is vulnerable to retaliation"). As the district court made clear, "this case concerns a state immigration law, and the federal government stands in no better—or worse—position to prosecute or remove Plaintiffs for federal immigration violations by virtue of their pseudonymity." JA312.

Oklahoma also argues that Plaintiffs' immigration status "does not involve personal intimate details of an embarrassing nature." Br. 45. But revealing someone's immigration status "could lead to criminal prosecution, harassment, and intimidation." *Hisp. Int. Coal. of Ala. v. Gov. of Ala.*, 691 F.3d 1236, 1247 (11th Cir. 2012); *see also M.K.A. v. Sec'y of Dep't of Homeland Sec.*, 2025 WL 2912632, at *3 (D. Kan. Oct. 14, 2025) (noting that "cases involving immigration issues implicate privacy and other concerns that are often protected from public

disclosure"); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064-65 (9th Cir. 2004) (concluding that revealing the immigration status of the plaintiffs could lead to legal consequences and would likely deter them from exercising legal rights). This is particularly true of noncitizens without present immigration status, who face especially severe repercussions if their identities are revealed. Courts therefore frequently allow them to proceed anonymously. *See, e.g.*, *Lozano*, 620 F.3d at 194-96; Order Granting Motion to Proceed Under Pseudonym, *Iowa Migrant Movement for Just. v. Bird*, No. 4:24-cv-00161-SHL-SBJ (S.D. Iowa June 6, 2024), ECF No. 37; *Doe v. Hobson*, 300 F.R.D. 576, 578 (M.D. Ala. 2014); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 370-72 (S.D.N.Y. 2019) (noting, among other factors, that "immigration matters are treated with sensitivity under the Federal Rules of Civil Procedure and the INA"); *Doe v. Wantong Int'l, Inc.*, 2025 WL 712762, at *2 (M.D. Fla. Mar. 5, 2025) (permitting pseudonymity for undocumented plaintiff seeking immigration relief on the basis of being the victim of a crime). Oklahoma's citation to cases identifying *other* types of highly sensitive and personal information does not negate the conclusion that immigration status *also* falls within that category. Br. 45.[10]

---

[10] "At this stage of the case," the district court was correct to "rely on the pleadings" to establish standing and grant pseudonymity. *Speech First, Inc. v. Shrum*, 92 F.4th 947, 950 (10th Cir. 2024). At a later stage, should it be necessary, "the district court could verify the existence and status of the pseudonymous members through in camera review." *Id.*

## V.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING PROVISIONAL CLASS CERTIFICATION

The district court provisionally certified an entry and reentry class, applying the proper Rule 23 standard in an extensive analysis. JA215-23, 291-93. Oklahoma largely concedes that class certification is proper. Br. 46-47.

Oklahoma once again reprises its objections to standing, Br. 47, but those are meritless, as explained above. *Supra* Part II.A.

The State's only other objection to certification is that Plaintiffs cannot satisfy numerosity because the size of the proposed classes is based on "speculation" and "conjecture." Br. 47. But "the numerosity requirement is not a question of numbers." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (cleaned up). Rather, it is about the impracticability of joinder, which depends on many factors, including the nature of the action and the location of the class members. *See id.*; *see also* JA219, 292. Plaintiffs cited undisputed evidence that Oklahoma is home to an estimated 90,000 undocumented immigrants, and the district court correctly concluded that "noncitizens falling within each proposed class would easily reach into the hundreds." JA219; *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) (numerosity can be established through production of "some evidence" or by "reasonable estimate [of] the number of class members who may be involved"). That is particularly true because here the class contains not only present, but also future, class members. *See Colorado Cross*,

49

765 F.3d at 1215 (finding numerosity "reasonable to infer" based on total number of Americans with disabilities and presence of "unknown, unnamed future members").[11]

## VI. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN WEIGHING THE EQUITIES

Plaintiffs face the prospect of being stopped, arrested, prosecuted, and imprisoned as they go about their daily lives, under a state criminal statute that is unconstitutional. *See generally* JA202-08. It is well established that "the threat of criminal prosecution" under a preempted state law "constitutes irreparable harm for purposes of a preliminary injunction." *Farmworker Ass'n of Fla., Inc. v. Moody*, 734 F. Supp. 3d 1311, 1338 (S.D. Fla. 2024) (collecting cases). That harm is exacerbated by H.B. 4156's banishment provision, which threatens to expel Plaintiffs and others like them from the State. They would face the trauma of being separated from their families, who would lose needed medical care and financial support. *See* JA084, ¶ 13; JA072, ¶¶ 6, 8; JA077-78, ¶ 10. Preventing people from caring for themselves and their families constitutes irreparable injury. *See Evans v. Utah*, 21 F. Supp. 3d 1192, 1210 (D. Utah 2014); *see also Heartland Acad. Cmty. Church v. Waddle*, 335

---

[11] Oklahoma's suggestion that *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025), established a general rule limiting relief to individual plaintiffs is flat wrong. Br. 46. *CASA* indicated that a class action that meets the requirements of Rule 23 is a proper procedural vehicle by which actions like this one can be brought. *See* 145 S. Ct. at 2555.

F.3d 684, 690 (8th Cir. 2003) (irreparable harm based on the risk of "trauma to already troubled children").[12]

The balance of equities also tips decisively in favor of Plaintiffs, and an injunction is strongly in the public interest. JA041-42, 310; *see Nken v. Holder*, 556 U.S. 418, 435 (2009) (third and fourth factors merge when defendants are governmental actors).

In contrast to severe harms faced by Plaintiffs, Oklahoma suffers no comparable harm from being unable to enforce a preempted statute. *See Edmondson*, 594 F.3d at 771; *Alabama*, 691 F.3d at 1301 ("[W]e discern no harm from the state's nonenforcement of invalid legislation.").

While Oklahoma raises concerns about drug trafficking and organized crime, Br. 5-8, it fails to explain why the State's existing criminal laws,[13] which are not

---

[12] Oklahoma suggests Plaintiffs delayed seeking preliminary relief and this cuts against finding irreparable injury. Br. 11. Much of the (brief) delay was necessary because the original plaintiffs declined to continue with the litigation because of fear that they would be targeted as a result—another indication of the current atmosphere of intimidation discussed above. Any delay was "reasonable," "not a decision by [Plaintiffs] to sit on [their] rights, and did not prejudice" Oklahoma. *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (30-month delay did not negate finding of irreparable harm) (cleaned up); *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) (similar, for three-month delay).

[13] Okla. Stat. tit. 63, §§ 2-401, 2-509 (2024) (cultivating marijuana); Okla. Stat. tit. 63, § 2-415 (2024); 2024 Okla. Sess. Laws 2d Reg. Sess. ch. SB 1280 (enacted 2024) (fentanyl); Okla. Stat. tit. 21, §§ 748, 1081, 1029 (2024); 2025 Okla. Sess. Laws 1st Reg. Sess. ch. HB 1215 (enacted 2025) (sex trafficking); Okla. Stat. tit. 21, § 748 (2024) (labor trafficking).

enjoined by the district court's decision, cannot address these issues or how H.B. 4156 would mitigate them.[14] Ultimately, while Oklahoma may have "frustrations with the problems caused by illegal immigration," it "may not pursue policies that undermine federal law." *Arizona*, 567 U.S. at 416.

Additionally, enforcing a state statute preempted by federal law "would work injury . . . to the public interest." *Pub. Utilities Comm'n of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 469 (1943); *see also Texas*, 144 F.4th at 687-88 (noting that "state and local interests are subservient to those of the nation at large, at least with regard to matters regarding foreign relations"); *U.S. v. Pink*, 315 U.S. 203, 233 (1942) (similar). And H.B. 4156 threatens to damage the relationship between immigrant communities and law enforcement, reducing noncitizens' willingness to report crimes due to fear of prosecution and banishment. *See, e.g.*, *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 270 (S.D.N.Y. 2020) (enjoining rule in part because

---

[14] While Oklahoma cites fentanyl concerns, Br. 6-7, the U.S. government confirms that fentanyl is overwhelmingly smuggled at ports of entry by U.S. citizens, not between ports by migrants—so H.B. 4156 is irrelevant to these problems. *See* "Frontline Against Fentanyl," *U.S. Customs & Border Prot.* (last modified Sept. 11, 2025), https://perma.cc/DA5H-WM78 ("More than 90% of interdicted fentanyl is stopped at Ports of Entry (POEs), where cartels attempt to smuggle it primarily in vehicles driven by U.S. citizens."). More generally, immigrant communities have consistently lower violent and drug crime rates than others. *See, e.g.*, "Undocumented Immigrant Offending Rate Lower Than U.S.-Born Citizen Rate," *Nat'l Inst. of Just.* (Sept. 12, 2024), https://perma.cc/GRD7-K7WE. And contrary to Oklahoma's assertion, Br. 5, border encounters are at an all-time low. "'Unheard Of': Illegal Border Crossings Plummet to Another New Record Low," *The White House* (Aug. 1, 2025), https://perma.cc/D27M-VPJK.

of chilling effect on immigrants seeking services); "Oklahoma Association of Chiefs of Police Release Joint Statement on HB 4156," *OKC Fox 25* (May 14, 2024), https://perma.cc/PR5E- L4F6 (H.B. 4156 will "ultimately result[] in increased public safety concerns").

Finally, Oklahoma's unclean hands argument has no merit. First, the unclean-hands defense "will not be applied to frustrate the purpose of [federal] laws or to thwart public policy[.]" *Deseret Apartments, Inc. v. U.S.*, 250 F.2d 457, 458 (10th Cir. 1957) (cleaned up); *see McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995). Its application here would permit states to flout federal supremacy, frustrating Congress's scheme. *See, e.g.*, *Lozano*, 620 F.3d at 193-94 (rejecting unclean hands argument in preemption case); *IORC*, 780 F. Supp. 3d, at 1038-39 (same). This Court may reject the unclean-hands defense on that ground alone.

Second, as discussed above, *supra* Part II.A, Plaintiffs' challenge to a preempted state law does not somehow "protect federally illegal conduct," Br. 48—they are still subject to federal immigration laws. JA313; *see Iowa*, 2025 WL 2984379, at *15.

Third, in any event, Oklahoma fails to establish the elements of this defense: (1) an "unconscionable act," (2) with "immediate and necessary relation to" the claim (3) that "affects the equitable relations between the parties." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). Oklahoma has not shown that

Plaintiffs' conduct "comes anywhere near constituting an 'unconscionable act.'" *FWAF*, 734 F. Supp. 3d at 1343. Oklahoma has not shown that any illegal conduct Plaintiffs have engaged in is directly related to the claim before the court—a challenge to the validity of a preempted state law. *See Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004). And Oklahoma has not shown that any conduct Plaintiffs have engaged in has personally injured Oklahoma. *See 1-800 Contacts, Inc. v. Mem'l Eye, P.A.*, 2010 WL 5149269, at *3 (D. Utah Dec. 13, 2010); *see also IORC*, F. Supp. 3d, at 1038-1039 (rejecting doctrine on this basis).

## CONCLUSION

The Court should affirm the district court's preliminary injunction order.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs support oral argument in this case. In addition to the critical issue of federal supremacy over immigration regulation, this case also raises complex issues regarding the Commerce Clause and Plaintiffs' standing and cause of action. Plaintiffs believe the Court's consideration of these issues would benefit from oral argument.

54

Dated: October 29, 2025

Respectfully submitted,

*/s/ Noor Zafar*

Cody Wofsy
Spencer Amdur
Oscar Sarabia Roman
American Civil Liberties
Union Foundation,
Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
*cwofsy@aclu.org*
*samdur@aclu.org*
*osarabia@aclu.org*

Noor Zafar
Grace Choi
Omar Jadwat
American Civil Liberties
Union Foundation,
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
*nzafar@aclu.org*
*gchoi@aclu.org*
*ojadwat@aclu.org*

Lorena Rivas
Elissa Stiles
Rivas & Associates
P.O. Box 470348
Tulsa, OK 74147
T: (918) 505-4870
*lorena@rivasassociates.com*
*estiles@rivasassociates.com*

Megan Lambert
Travis Handler
Rebecca Barrett
American Civil Liberties Union
of Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK
73113
T: (405) 525-3831
*mlambert@acluok.org*
*thandler@acluok.org*
*rbarrett@acluok.org*

*Attorneys for Plaintiffs-Appellees*

55

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the limitation set forth in Federal Rules of Appellate Procedure 27(b)(3) because it contains 12,791 words, exclusive of the portions of the brief that are exempted by Rule 32(f). I certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Noor Zafar*
Noor Zafar
October 29, 2025

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made as required by 10th Cir. R. 25.5 and the ECF Manual. Additionally, this filing was scanned with AVG antivirus software on October 29, 2025.

*/s/ Noor Zafar*
Noor Zafar
October 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I electronically filed the foregoing

Motion with the Clerk for the United States Court of Appeals for the Tenth Circuit

by using the CM/ECF system. A true and correct copy of this brief has been served

via the Court's CM/ECF system on all counsel of record.

*/s/ Noor Zafar*
Noor Zafar
October 29, 2025
