No. 25-6080

===

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

───────────────────

PADRES UNIDOS DE TULSA, *et al.*,

*Plaintiffs-Appellees,*

v.

GENTNER DRUMMOND, *et al.*,

*Defendants-Appellants.*

───────────────────

On appeal from the United States District Court
for the Western District of Oklahoma
The Hon. Bernard M. Jones
No. 5:24-cv-511-J

===

## REPLY BRIEF OF THE STATE OF OKLAHOMA

===

GARRY M. GASKINS, II
  *Solicitor General*
ZACH WEST
  *Director of Special Litigation*
CULLEN D. SWEENEY
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Cullen.Sweeney@oag.ok.gov
*Counsel for Defendants-Appellants*

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

   I.   PLAINTIFFS LACK A LEGALLY PROTECTED INTEREST. ..................... 1

  II.  PLAINTIFFS DO NOT HAVE A CAUSE OF ACTION OR
       EQUITABLE CLAIM. .............................................................. 7

 III.  OKLAHOMA'S LAW IS NOT FIELD OR CONFLICT PREEMPTED. ................. 14

 IV.  THIS COURT SHOULD NOT SHIELD LAWBREAKING
       VIA PSEUDONYM. ................................................................ 21

  V.  THIS COURT SHOULD NOT PERMIT A CLASS OF FEDERAL
       LAWBREAKERS. ................................................................... 23

CONCLUSION ....................................................................................... 24

CERTIFICATE OF COMPLIANCE ....................................................... 26

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 26

CERTIFICATE OF SERVICE ................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Amalgamated Clothing Workers of Am. v. Richman Bros.*,
348 U.S. 511 (1955) ................................................................................. 9

*Arizona v. United States*,
567 U.S. 387 (2012) ................................................................. 14, 15, 16, 19

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) ............................................................................ 12, 13

*Biden v. Nebraska*,
600 U.S. 477 (2023) ................................................................................. 2

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ................................................................................ 23

*CGC Holding Co., LLC v. Hutchens*,
974 F.3d 1201 (10th Cir. 2020) ............................................................... 8, 11

*Chy Lung v. Freeman*,
92 U.S. 275 (1875) ................................................................................ 16

*City of Hazleton v. Lozano*,
563 U.S. 1030 (2011) ................................................................................ 5

*Deseret Apartments, Inc. v. United States*,
250 F.2d 457 (10th Cir. 1957) ..................................................................... 9

*Ex parte Young*,
209 U.S. 123 (1908) .............................................................................. 8, 12

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ................................................................................ 15

*Georgia Latino Alliance for Human Rights v. Governor of Georgia*,
691 F.3d 1250 (11th Cir. 2012) .................................................................... 12

*Idaho Org. of Res. Councils v. Labrador*,
780 F. Supp. 3d 1013 (D. Idaho 2025) ............................................................ 4

*Initiative and Referendum Institute v. Walker*,
450 F.3d 1082 (10th Cir. 2006) .............................................................. 3, 4, 5, 7

*Iowa Migrant Movement for Just. v. Bird*,
157 F.4th 904 (8th Cir. 2025) ................................................................. 4, 10

*Kansas v. Garcia*,
589 U.S. 191 (2020)................................................................. 13, 15, 16, 17, 18, 19, 20

*Keystone Driller Co. v. Gen. Excavator Co.*,
290 U.S. 240 (1933)............................................................................................8, 11, 14

*Kingdomware Techs. v. United States*,
579 U.S. 162 (2016) ........................................................................................................ 18

*Lozano v. City of Hazleton*,
620 F.3d 170 (3d Cir. 2010) ................................................................................... 5, 10

*Mayor of New York v. Miln*,
36 U.S. 102 (1837)........................................................................................................... 16

*Moody v. NetChoice*,
603 U.S. 707 (2024)........................................................................................................ 21

*Murphy v. NCAA*,
584 U.S. 453 (2018)........................................................................................................... 4

*Nat'l Coal. of Latino Clergy, Inc. v. Henry*,
No. 07-CV-613-JHP, 2007 WL 4390650
(N.D. Okla. Dec. 12, 2007)....................................................5, 6, 7, 9, 11, 12, 23

*Plyler v. Doe*,
457 U.S. 202 (1982).................................................................................. 6, 7, 10, 17, 23

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
324 U.S. 806 (1945) ................................................................................................... 8, 12

*Ramirez v. Collier*,
595 U.S. 411 (2022) .......................................................................................................... 8

*Rizzo v. Goode*,
423 U.S. 362 (1976)........................................................................................................ 12

*Safe Streets Alliance v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017)................................................................................12, 13

*Tarango-Delgado v. Garland*,
19 F.4th 1233 (10th Cir. 2021) .............................................................8, 10, 11, 12, 13

*Trump v. CASA*,
606 U.S. 831 (2025).................................................................................................23, 24

*United States v. Texas,*
  97 F.4th 268 (5th Cir. 2024) ........................................................................ 12, 16

*United States v. Texas,*
  144 F.4th 632 (5th Cir. 2025) ..................................................................... 15, 16

*United States v. Texas,*
  150 F.4th 656 (5th Cir. Aug. 29, 2025) ............................................................ 15

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ......................................................................................... 24

*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021) ........................................................................................... 10

*Worthington v. Anderson,*
  386 F.3d 1314 (10th Cir. 2004) ......................................................................... 8

**Statutes**

8 U.S.C. § 1325 .................................................................................................. 18

8 U.S.C. § 1326 .............................................................................................. 2, 18

## INTRODUCTION

Plaintiffs are present in the United States in violation of federal law: They do not deny this in their Response. And they have used that illegal status to obtain a preliminary injunction of a law enacted by a sovereign State—and supported by the United States— that simply duplicates the federal laws they are breaking. Moreover, Plaintiffs sought and obtained pseudonym status for the express purpose of avoiding federal consequences. Despite the Supreme Court's recent holding that universal injunctions are verboten, the district court also granted Plaintiffs universal relief by certifying two classes of federal lawbreakers. None of this is proper, lawful, or equitable, and Plaintiffs' arguments otherwise are without merit.

## I. PLAINTIFFS LACK A LEGALLY PROTECTED INTEREST.

In opening, Oklahoma argued that Plaintiffs lack standing because: (1) they are in the United States contra federal law; and (2) they lack a "legally protected interest" to challenge state laws mirroring that federal law. In response, Plaintiffs do not deny that they are violating federal law, nor do they deny that a "legally protected interest" is required for standing. But these realities mean the district court should not have allowed this pre-enforcement facial challenge to proceed.

To begin, Oklahoma accused Plaintiffs of having "admitted [to] federal lawbreaking." Oklahoma Brief ("Okla. Br.") at 12. Plaintiffs never push back. Instead, they admit they are violating HB 4156, *e.g.*, Plaintiffs' Response ("Resp.") at 7, 11, and they concede that one Plaintiff has not "obtained legal authorization to enter the United

States" and that the other has been "ordered 'removed.'" *Id.* at 11. That they occasionally deploy wiggle words, *e.g.*, *id.* at 3 ("Plaintiffs' *supposed* law breaking" (emphasis added)), means little in light of their concessions and refusal to deny federal illegality. To be sure, Plaintiffs claim—sans citation—that "[m]any" of them "have applied for immigration relief, and the federal government is aware of their presence." *Id.* at 3; *see also id.* at 15, 35–36. A mere application and federal awareness, however, do not eliminate plain illegality. In sum, Plaintiffs are federal lawbreakers.

Plaintiffs also decline to contest that they need a "legally protected interest" to stand on. Nor could they. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (standing requires "a legally protected interest"). Instead, Plaintiffs argue that "they have a legally protected interest in not being arrested, prosecuted, and banished from Oklahoma under a preempted state law." Resp. at 8. But federal law literally requires them to be arrested, prosecuted, and banished. *See, e.g.*, 8 U.S.C. § 1326(a) (persons illegally reentering "*shall* be fined … or imprisoned" (emphasis added)). They have a legally *punishable* interest, not a legally protected one.

Plaintiffs violating federal law have no legally protected interest in being charged for that lawbreaking by one sovereign instead of another, especially when both sovereigns have jurisdiction and neither opposes prosecution here. At most (although Oklahoma is not conceding this), the co-sovereigns would be able to contest the other's actions. But the lawbreakers' illegal behavior cannot give them any sort of "legally

protected interest" to tout, as plaintiffs, in a pre-prosecution federal court facial challenge. Such a standing claim fails conceptually and as a matter of law.

Plaintiffs can raise preemption claims in response to a state prosecution. For that reason alone, Plaintiffs' claim to standing "because they are subject to prosecution under the statute," Resp. at 11, falls flat. Normally, yes, plaintiffs could challenge a law in advance when subject to state prosecution. But every rule has exceptions, and this is far from a normal case. It is entirely abnormal for a plaintiff to come to federal court and claim that federal lawbreaking provides them with a "legally protected interest" to challenge, in advance, a state law mirroring that federal law.

That's where *Initiative and Referendum Institute v. Walker* comes in. The term "legally protected interest," this Court explained, "has independent force and meaning." 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc). And the first example this Court gave was that "a person complaining that government action will make his criminal activity more difficult lacks standing because his interest is not 'legally protected.'" *Id.* If this language does not apply here—to admitted lawbreakers attempting to avoid the consequences through preemption and pseudonymity—then when would it apply?

Plaintiffs argue that *Walker* "provides little guidance here." Resp. at 13. But this makes little sense. For instance, Plaintiffs repeat that they "have a significant legally protected interest in not being arrested, imprisoned, and banished from Oklahoma by a state entity that lacks the constitutional power to engage in such action against them." *Id.* This fails for reasons just described: Plaintiffs are currently subject to arrest,

3

imprisonment, and banishment, and both sovereigns agree that Oklahoma can act here. Nevertheless, Plaintiffs argue that they possess a constitutional "right" or "interest" in preemptively opposing a preempted law. *Id.* (citing *Murphy v. NCAA*, 584 U.S. 453 (2018)). But *Murphy* involved anti-commandeering principles, not preemption by illegal aliens of state laws mirroring federal criminal statutes. And *Murphy*'s use of the term "right" in that distinct context cannot mean Congress gave illegal aliens an enforceable right to sue states for enforcing the very laws they violate.

Plaintiffs cite two recent decisions enjoining laws similar to HB 4156. Resp. at 13. But the Eighth Circuit decision did not involve aliens here illegally. *See Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904, 914 (8th Cir. 2025) ("*IMMJ*") ("Doe and Roe … are both lawfully in the United States."). In addition, the District of Idaho's dubious decision that illegal aliens have a "constitutional interest" in a pre-enforcement challenge was driven in part by Ninth Circuit caselaw in tension with this Court's decision in *Walker*. *See Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1032 (D. Idaho 2025). This Court's precedent is binding here; the Ninth Circuit's is not.

Plaintiffs point to no similar holding of this Court. Rather, they claim *Walker* is different because it "involved a First Amendment challenge to a state constitutional provision concerning ballot initiatives." Resp. at 13–14. The State is not relying on *Walker*'s facts, though, but rather on the clear legal principle this Court laid out—that "legally protected interest" has teeth, and that a primary example of this bite is that lawbreakers do not have standing to further their lawbreaking. In response, Plaintiffs

insinuate that this principle need not be followed here because it is a "general statement … offered without further commentary or explanation." Resp. at 14. But the statement in *Walker* that lawbreakers do not have standing to further lawbreaking is literally part of this Court's commentary and explanation of the general principle that an individual must have a legally protected interest. Plaintiffs' point is baseless.

Lacking a serious response to *Walker*'s text, Plaintiffs also argue that this Court's straightforward statement in *Walker* "cannot be construed as a categorical bar to preemption challenges by noncitizens who lack status" because of a smattering of court decisions. *Id.* at 14–15. But the State is not arguing for a categorical bar, and none of those decisions comes from this Court. Tellingly, the first case they muster is a vacated Third Circuit decision. *See Lozano v. City of Hazleton*, 620 F.3d 170 (3d Cir. 2010), *vacated sub nom. City of Hazleton v. Lozano*, 563 U.S. 1030 (2011). There, the Third Circuit admitted that its view conflicted with the Northern District of Oklahoma. *See Nat'l Coal. of Latino Clergy, Inc. v. Henry*, No. 07-CV-613-JHP, 2007 WL 4390650 (N.D. Okla. Dec. 12, 2007) (unpublished). *Henry* is worth reading. In sum, it comes from a district court within this Circuit, it essentially predicts *Walker*'s language on this point, it ruled in favor of Oklahoma, it rejected a lawsuit brought by illegal aliens, and it denied standing based on similar logic as Oklahoma is using now, debunking Plaintiffs' claim that courts have "uniformly rejected similar arguments." Resp. at 14–15. Plaintiffs ignore *Henry*, even though Oklahoma cited it earlier. Okla. Br. at 48–49.

*Henry* invoked prudential concerns and unclean hands to deny standing. The court was "deeply concerned by the implications of the illegal Plaintiffs' admission of violations of federal immigration laws" and by their attempt "to remove any barriers the state of Oklahoma has erected to their continued violation of those federal laws." *Henry*, 2007 WL 4390650, at *9. "Plaintiffs seek nothing more than to use this Court as a vehicle for their continued unlawful presence in this country." *Id. Henry* recognized that illegal aliens may access the courts when their alleged injury is "unrelated" to their "status as an illegal alien." *Id.* at *9 nn.6–7. (Again, there is no categorical bar.) But the court drew the line where "the admitted violations of federal immigration law" are "*directly*, even causally, related to the injuries the illegal alien Plaintiffs ask this Court to remedy." *Id.* at *9 n.6. "To allow these Plaintiffs to do so would make this Court an 'abetter of iniquity.'" *Id.* at *9. This is exactly right. Holding otherwise would open the door to outlandish scenarios. *See id.* at *9 n.8 (aliens in violation of federal terrorism laws "[s]urely" could not anonymously challenge the Oklahoma Antiterrorism Act).

Also worth addressing is *Plyler v. Doe*, 457 U.S. 202 (1982), where the Supreme Court allowed an "equal protection challenge by undocumented students." Resp. at 14. *Plyler* was not a standing decision, and it counsels for Oklahoma because it was grounded on the fact that the plaintiffs were children. For adults, *Plyler* was clear: "[T]hose who elect to enter our territory by stealth and in violation of our law should be prepared to bear the consequences, including, but not limited to, deportation." *Id.* at 220. Adults can "'conform their conduct to societal norms,' **and presumably the**

**ability to remove themselves from the State's jurisdiction**." *Id.* (emphasis added) (citation omitted). Per *Plyler*, adults must face consequences for their illegality.

Plaintiffs claim they are not asking the federal courts to make their lawbreaking easier. Resp. at 15. But that is exactly what they are asking. *See Henry*, 2007 WL 4390650, at *9. State prosecutions would undeniably make it harder for Plaintiffs to remain in Oklahoma in violation of federal law, and Plaintiffs do not contest that point in any detail. Nor is it the case that, for *Walker* to apply, a plaintiff must expressly allege that his federal lawbreaking will be made more difficult if he does not prevail. If that were true, then *Walker* would never apply, because no one would be foolish enough to craft a complaint that parrots this exact phrasing. Inferences are appropriate.

Finally, Plaintiffs bizarrely claim, sans citation, that they are merely "longtime Oklahoma citizens who simply seek to go about their lives." Resp. at 15. If that were the case, then this lawsuit would not exist because there would be zero chance of HB 4156 applying to them. Instead, Plaintiffs have admitted they are here illegally, and their Complaint says nothing about Oklahoma citizenship. They lack standing.

## II.  PLAINTIFFS DO NOT HAVE A CAUSE OF ACTION OR EQUITABLE CLAIM.

Plaintiffs lack a cause of action under the Immigration and Nationality Act ("INA") to bring the present lawsuit. Okla. Br. at 22–30. Plaintiffs do not contest this point in any meaningful way in their Response. They certainly do not point to any statutory text that authorizes people violating the INA to sue states to enforce the INA's preemptive effect. Instead, Plaintiffs claim they have a cause of action based in

equity, citing *Ex parte Young*, 209 U.S. 123 (1908). (Indeed, Plaintiffs' header for their cause of action response is simply, "Plaintiffs may sue in equity." Resp. at 15.)

Plaintiffs may not sue in equity. *See* Okla. Br. at 48–49. Per binding authority from this Court and the Supreme Court, Plaintiffs have unclean hands due to their breaking foundational federal laws regulating entry and reentry into the United States. "[O]ne of the fundamental principles upon which equity jurisprudence is founded" is that a plaintiff "must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933). "This maxim is far more than a mere banality," *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945), and it applies in "all" cases. *Ramirez v. Collier*, 595 U.S. 411, 434 (2022).

According to this Court, "equity will not aid a party whose conduct has been unlawful, unconscionable, or inequitable." *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020); *see also Worthington v. Anderson*, 386 F.3d 1314, 1319 (10th Cir. 2004). As such, just four years ago, this Court held that a Mexican national challenging the Board of Immigration Appeals' decision not to reopen his removal proceedings could not seek a particular equitable remedy "**because his illegal reentry disqualified him for equitable relief**." *Tarango-Delgado v. Garland*, 19 F.4th 1233, 1241 (10th Cir. 2021) (emphasis added). *Tarango-Delgado* is binding, and Plaintiffs are disqualified from equitable relief here due to their illegal actions.

Plaintiffs mostly ignore or twist the above language and caselaw. Resp. at 53–54. But in so doing, Plaintiffs never deny violating federal law, which one would think would be the very first rebuttal—if there were any denial to be had. This is the dog that didn't bark. *See Henry*, 2007 WL 4390650, at *9 ("[T]he illegal alien Plaintiffs make no attempt to validate their unlawful presence in this country.").

In any event, Plaintiffs claim the doctrine cannot be "applied to frustrate the purpose of [federal] laws or to thwart public policy." Resp. at 53 (quoting *Deseret Apartments, Inc. v. United States*, 250 F.2d 457, 458 (10th Cir. 1957)). As should be obvious, however, denying equitable relief because Plaintiffs are federal lawbreakers in no way, shape, or form "frustrates the purpose" of federal law or "thwart[s] public policy." Quite the opposite: public policy requires that Plaintiffs' actions be punished, not wielded as an equitable tool in federal court. Criminalization is not congressional consent. Nevertheless, Plaintiffs argue that applying unclean hands "here would permit states to flout federal supremacy." Resp. at 53. Not so. In any state prosecution the courts would have to analyze preemption, reviewable by the Supreme Court. *See Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 518 (1955) (rejecting the "assumption … that federal rights will not be adequately protected in the state courts … subject to review by this Court"). It is Plaintiffs' position that would flout federal and state sovereignty by allowing federal lawbreakers to use equity, pseudonymity, and federal courts to avoid the consequences of their lawless actions.

9

Plaintiffs' cited cases are no help, either, in no small part because they conflict with this Court's precedent, including *Tarango-Delgado*. One case is the vacated Third Circuit decision, *Lozano*, 620 F.3d at 193–94. That decision's reliance on *Plyler* ignores the distinction between culpable adults and innocent children, though, and its reliance on due process does not help Plaintiffs, who have not raised a due process claim here. Put simply, there is no "unqualified right to pre-enforcement review of constitutional claims in federal court," and "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021). Supreme Court precedent trumps vacated circuit decisions. And Plaintiffs' decision to ignore this binding language, cited in Oklahoma's opening, speaks volumes.

Next, Plaintiffs argue that their lawsuit "does not somehow 'protect federally illegal conduct'" because "they are still subject to federal immigration laws." Resp. at 53. Plaintiffs' only citation for this, though, is the Eighth Circuit decision where (again) the plaintiffs were "both lawfully in the United States." *IMMJ*, 157 F.4th at 914. And regardless, Plaintiffs' lawsuit obviously protects their federally illegal conduct— Plaintiffs sought, and were granted, pseudonymity for that very reason. J.A. 198, 311–12. And it is basic common sense that a lawbreaker is more protected if he can be investigated and prosecuted by only one sovereign, rather than two. If Plaintiffs prevail, their lawbreaking will be made easier.

Citing *Keystone*, Plaintiffs contend Oklahoma has not "establish[ed] the elements" of unclean hands. Resp. at 53. Ignoring that this doctrine lacks rigid elements, *e.g.*, *Keystone*, 290 U.S. at 245 (courts "are not bound by formula"), Plaintiffs are wrong. First, they claim their acts are not "unconscionable." Resp. at 53–54. But this Court is clear that "equity will not aid a party whose conduct has been **unlawful**, unconscionable, or inequitable." *Hutchens*, 974 F.3d at 1214 (emphasis added). And in this Circuit, "illegal reentry disqualifie[s]" a person "for equitable relief." *Tarango-Delgado*, 19 F.4th at 1241.

Second, Plaintiffs argue, preposterously, that "Oklahoma has not shown that any illegal conduct Plaintiffs have engaged in is directly related to the claim before the court." Resp. at 54. That Plaintiffs' federal lawbreaking is directly related to Oklahoma's law mirroring the federal laws broken is basically indisputable here. Indeed, Plaintiffs' entire argument is that those federal laws preempt Oklahoma's HB 4156 by their sheer existence. *See Henry*, 2007 WL 4390650, at *9 ("Plaintiffs seemingly concede the validity of the federal immigration laws, and file this suit in order to remove any barriers the state of Oklahoma has erected to their continued violation of those federal laws."). The direct connection here is self-evident.

Third, Plaintiffs argue that "Oklahoma has not shown that any conduct Plaintiffs have engaged in has personally injured Oklahoma." Resp. at 54. Oklahoma is a sovereign state, with borders. Thus, Plaintiffs have harmed Oklahoma by transgressing those borders illegally, much as a trespasser harms a homeowner by trespassing. And whereas a trespasser would typically not advertise his transgression, Plaintiffs are now

publicly "seek[ing] nothing more than to use this Court as a vehicle for their continued unlawful presence in this country." *Henry*, 2007 WL 4390650, at *9. That is more than enough, especially given that this Court found "illegal reentry" disqualifying in *Tarango-Delgado* without even analyzing injury. 19 F.4th at 1241.

Moreover, the unclean hands doctrine "assumes even wider and more significant proportions" when "a suit in equity concerns the public interest as well as the private interests of the litigants." *Precision Instrument*, 324 U.S. at 815. This broader standard applies here, where a sovereign defends its borders with federal support. And federalism principles also counsel for dismissal. *See Rizzo v. Goode*, 423 U.S. 362, 379–80 (1976).

To be sure, Plaintiffs cite courts that "expressly recognized that equitable relief is available to enjoin preempted state immigration laws." Resp. at 16. But those decisions tend to be recent cases that are being appealed, pre-*Armstrong* cases, or cases with law-abiding plaintiffs. For instance, *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012), pre-dated *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), and the individual plaintiff was "permissibly in the United States," 691 F.3d at 1258. And Judge Oldham's statement about *Ex parte Young* did not concern illegal aliens, who are not among the plaintiffs in the Texas lawsuit. *United States v. Texas*, 97 F.4th 268, 310 (5th Cir. 2024) (Oldham, J., dissenting).

Of course, what other jurisdictions say pales in importance to this Court's precedent. In opening, Oklahoma argued that *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), requires a cause of action that Plaintiffs do not possess, and

it allows equitable injunctions only when a person has federal rights or immunities. Okla. Br. at 25. In response, Plaintiffs claim that federal criminal law in the INA indeed "immunizes" illegal aliens or gives them a "right" to be free from state prosecution. Resp. at 16–17. Oklahoma disagrees. A law that criminalizes behavior does not create immunity allowing access to courts of equity based on the same criminal behavior. *Cf. Kansas v. Garcia*, 589 U.S. 191, 211 (2020) (finding no preemptive "right to be free of criminal" penalties for using "a false identity on tax-withholding forms" because "federal law makes it a crime to use fraudulent information on a W–4"). Plaintiffs' argument strains credulity, to say the least, and it would create substantial and unnecessary tension between *Hickenlooper* and cases like *Tarango-Delgado*.

Plaintiffs obviously lack confidence in this argument, because they quickly flip and say federal "rights" aren't necessary. Resp. at 17. And "[t]o the extent that" *Hickenlooper* required such a right, Plaintiffs claim this Court "misinterpret[ed] *Armstrong*." *Id.* at 17–18. But *Hickenlooper* indicated that an actual right is required, and this Court should not back away from that. Nor is it significant—at least not here— that the state regulates Plaintiffs "directly." Resp. at 18. Contra Plaintiffs' assertion, *Hickenlooper* does not say that all direct regulation can be equitably challenged, nor could it when doctrines such as unclean hands exist. *See, e.g.*, *Tarango-Delgado*, 19 F.4th at 1241.

Plaintiffs also claim the INA "contains no exclusive remedy that would displace equitable relief." Resp. at 19. But criminalization is enough to displace equitable relief. The very nature of the thing rules out equity. Plaintiffs call criminalization "flimsy

13

evidence," *id.* at 20, but this is pure projection. Does Congress really need to add, with every criminal law, that the law does not give the criminal a right to sue in equity? Surely not. Nevertheless, Plaintiffs add that they should not have to expose themselves to prosecution to challenge a state criminal law. Resp. at 20. But that logic doesn't apply here because they are already risking prosecution though their federal lawbreaking.

Plaintiffs' view, again, would mean that law-abiding and injured United States citizens cannot resort to equity to challenge a Colorado law in clear conflict with federal law, while law-breaking aliens can use equity to challenge an Oklahoma law that merely duplicates federal law. This is not an equitable result. *See Keystone*, 290 U.S. at 245 (equity is about the "advancement of right and justice").

## III.  OKLAHOMA'S LAW IS NOT FIELD OR CONFLICT PREEMPTED.

Plaintiffs argue that HB 4156 is field and conflict preempted. They are wrong on both fronts, and in their assessment of what HB 4156 does. The two actual sovereigns involved here, Oklahoma and the United States, have already explained in depth why neither field nor conflict preemption applies. *See* Okla. Br. at 30–40; Brief for United States as *Amicus Curiae* ("U.S. Br."). Nothing in Plaintiffs' Response changes this.

The Supreme Court has emphasized the lofty standard for field preemption. Courts must "assume that 'the historic police powers of the States' are not superseded 'unless that was the **clear and manifest purpose** of Congress.'" *Arizona v. United States*, 567 U.S. 387, 400 (2012) (citation omitted) (emphasis added). Only an "**unambiguous congressional mandate**" will suffice. *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S.

14

132, 147 (1963) (emphasis added). As such, field preemption is "**rare**." *Kansas*, 589 U.S. at 208 (emphasis added). Plaintiffs do not acknowledge these binding statements.

Plaintiffs instead tout the "unanimous judgment of every other court to have considered such laws." Resp. at 22. But these issues are new and percolating, and the Fifth Circuit—after a thorough panel dissent arguing against field and conflict preemption—recently vacated its panel opinion *en banc. See United States v. Texas*, 144 F.4th 632 (5th Cir. 2025), *vacated and reh'g granted*, 150 F.4th 656 (5th Cir. Aug. 29, 2025).[1] The alleged unanimity is tenuous, at best. Plaintiffs, who (like the court below) have relied extensively on the Fifth Circuit, downplay this by asserting that Texas's "leading argument in its [*en banc*] petition addressed organizational standing." Resp. at 22 n.5. But Texas also argued against field and conflict preemption, Defs.' Supp. En Banc Brief, 2025 WL 2959344, at *35–48 (Oct. 13, 2025), and the Fifth Circuit did not limit its *en banc* actions to standing. That aside, what is Plaintiffs' point? Oklahoma led with standing issues here, as well. That the Fifth Circuit may rule for Texas on standing grounds, avoiding the merits, could only help Oklahoma here.

In any event, Plaintiffs' field preemption arguments stretch far too broadly. Rather than narrowly defining a field, like alien registration in *Arizona*, Plaintiffs

---

[1] *See also id.* at 724 (Oldham, J., dissenting) ("The majority runs roughshod over the presumption against preemption and its attendant federalism concerns, which are especially weighty in the field preemption context. It ignores numerous statutes that invite States to the field of entry and removal of aliens. And it goes far beyond *Arizona*'s holding. Its decision cannot be squared with the INA, *Arizona*, or basic field preemption principles.").

essentially argue that Congress has historically occupied the entire field of immigration—entry, admission, removal, and so on. *See, e.g.*, Resp. at 23 ("For nearly 150 years, the Supreme Court has recognized that the power to control immigration … is *exclusively* a federal power." (quoting *Texas*, 144 F.4th at 667 & n.267)); *id.* at 38 ("Immigration is federal business"). But this "conception of the field is far too expansive." U.S. Br. at 12; *see also Kansas*, 589 U.S. at 208. At that level of generality, alien registration would not be its own field, and *Arizona* would have been a much different decision. U.S. Br. at 12. Moreover, "[t]he Supreme Court has never extended field preemption to any part of the immigration laws beyond alien registration." *Texas*, 97 F.4th at 298 (Oldham, J., dissenting). (HB 4156, of course, has nothing to do with alien registration.) In seeking to extend *Arizona*, Plaintiffs would render it obsolete.

Plaintiffs' historical claims, Resp. at 23, also lack context. For the first century of the Republic, States extensively regulated aliens,[2] and they had "undeniable and unlimited jurisdiction" over persons within their borders. *Mayor of New York v. Miln*, 36 U.S. 102, 139 (1837). Even *Chy Lung v. Freeman*, which Plaintiffs cite, left open the possibility of state authority to enforce laws against "convicted criminals from abroad." 92 U.S. 275, 280 (1875).

---

[2] Oklahoma explored this history of state enforcement more in-depth in its multistate amicus brief in the Eighth Circuit. *See Amici Curiae* Br. of Oklahoma, *et al.*, *IMMJ*, 157 F.4th 904 (No. 24-2263 July 10, 2025), 2025 WL 2017398, at *10–18.

16

Moreover, States have always retained authority to enforce generally applicable criminal laws against all persons, including illegal aliens. But if "immigration" writ large is a preempted field, such laws and prosecutions would be threatened with preemption. Rather than take that route, the Supreme Court recognizes that States may still criminalize actions by illegal immigrants—especially when the State mimics federal law. *See, e.g.*, *Phyler*, 457 U.S. at 219 n.19 ("[I]f the Federal Government has by uniform rule prescribed what it believes to be appropriate standards for the treatment of an alien subclass, the States may, of course, follow the federal direction."); *Kansas*, 589 U.S. 191, 212 ("[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests.").

Nevertheless, Plaintiffs argue that Congress has legislated so extensively over aliens entering the country that there is no room for State laws. Resp. at 23. But this is still too broad, because it ignores that the two federal laws in question criminalizing "entry and reentry" are "simple and straightforward"—and nothing like the INA's "far more complex and comprehensive" alien registration provisions. U.S. Br. at 11. Plaintiffs cannot create field preemption by pointing to the infamously byzantine nature of immigration laws more generally. *E.g.*, Resp. at 23. Again, that route would mean everything related to immigration is field preempted, which contradicts precedent.

Plaintiffs also emphasize that the federal government's prosecutorial discretion counsels for preemption—field and otherwise. *E.g.*, Resp. at 24. But this cannot be true. First, Congress did not phrase the relevant laws discretionarily, but rather said the

17

violators "shall" be punished. 8 U.S.C. §§ 1325(a), 1326(a); *see also Kingdomware Techs. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."). Second, the sovereign with this alleged discretion is present, and it disagrees with the federal lawbreakers. *See* U.S. Br. at 13 ("emphasis on enforcement discretion cannot be reconciled with … *Kansas*"). (Ironically, the United States is exercising discretion here to support Oklahoma, and Plaintiffs criticize it for doing so. Resp. at 31.) Third, under Plaintiffs' view, Congress would preempt a field every time it enacted a criminal law—with "staggering" implications for state sovereignty. *Zyla Life Scis. v. Wells Pharma of Houston*, 134 F.4th 326, 335 (5th Cir. 2025). If overlap with federal law plus federal discretion creates preemption, then "many state statutes [that] incorporate federal criminal requirements" are at risk, *id.* at 334–35, as well as human and drug trafficking, identity theft, fraud, and even murder prohibitions.

Even worse, Plaintiffs argue that "foreign-policy objectives" counsel for preemption here. Resp. at 24; *see also id.* at 35. But "the concern of a foreign government, by itself, does not have preemptive effect." U.S. Br. at 13. Mexico does not get to nullify a state prosecution of an illegal alien for murder, for instance. Nor can an executive's foreign policy views erase the congressional mandate criminalizing the behavior in question. And the executive's "brooding federal interest" in foreign policy cannot undermine a state's sovereign duty to protect its people. *Kansas*, 589 U.S. at 202 (citation omitted). Plaintiffs strain to distinguish *Kansas* factually, Resp. at 30, but they ignore the

18

key quotes supporting Oklahoma (*e.g.*, "rare" field preemption), and all their logic would counsel for a case like *Kansas* coming out the other way. *See, e.g.*, 589 U.S. at 210 ("Respondents argue that field preemption in these cases 'follows directly' from our decision in *Arizona*, but that is not so.").

Plaintiffs also spill much ink arguing that HB 4156 "plainly" regulates "entry and reentry into the United States." Resp. at 26. This is nonsensical. Oklahoma is not a border state, and nothing in HB 4156 reaches outside of Oklahoma across any federal border. Nor could it, legally or practically. Even if entry and reentry, or unlawful entry or reentry, are a field of sorts, Oklahoma is not regulating entry into the United States, nor is it requiring removal from the United States. It is simply acting as a sovereign must, protecting its own borders and people. The State's creation of "an Oklahoma criminal analogue" to federal law, Resp. at 26, does not change that calculus any more than creating an analogue to a federal environmental law would mean Oklahoma was trying to regulate the Alaska-Canada border. The power to regulate entry is "unquestionably a federal power," Resp. at 29 (citation omitted), but that does not prohibit Oklahoma from utilizing Congress's regulations to protect itself.

This also applies to Plaintiffs' argument that HB 4156 unlawfully banishes illegal aliens. Resp. at 31–34. Oklahoma is not infringing on the federal government's power to expel aliens from the United States—it is saying they must leave Oklahoma. And Plaintiffs' claim that HB 4156 "threatens to banish thousands of asylum seekers, visa applicants, and others who have a federal right to remain in the United States," Resp.

at 32, is plainly mistaken. HB 4156 applies only to those unlawfully present; "lawfully present visitors" are protected. HB 4156, § 1(A); *see also id.* § 2(F)(1)(A). And regardless, Plaintiffs' concerns at most could amount to an as-applied challenge for someone with a right to be in the United States—it certainly does not show that HB 4156 is unlawful in applying to illegal aliens with no right to be present.

Many of these points counsel against conflict preemption, as well. In sum, "it is certainly possible to comply with both" the INA and HB 4156, and Plaintiffs "do not suggest otherwise." *Kansas*, 589 U.S. at 210–11. And a simple overlap with federal law combined with federal enforcement discretion cannot create an "obstacle" to federal laws, or else every other overlapping law would be preempted. *See id.* at 211 ("The mere fact that state laws … overlap" with federal criminal law "does not even begin to make a case for conflict preemption.").

Perhaps the most significant portions of Plaintiffs' conflict preemption section are the admissions. Plaintiffs again admit they are not lawfully present, claiming only to have "pending" applications for relief. Resp. at 35–36. They concede that HB 4156 mirrors federal law. *See* Resp. at 37 (protesting only that "this misses the point"). They quote HB 4156's holding that a federal grant of "lawful presence" exempts a person from the statute's reach. Resp. at 38–39. And they admit, reluctantly, that the INA gives Oklahoma a "role in assisting federal enforcement" for immigration. Resp. at 39 n.8. Plus, Plaintiffs' discussion of *Arizona* and conflict preemption undermines their field preemption arguments, as they are forced to acknowledge that an Arizona law that

"directed state police officers to contact immigration authorities during traffic stops" was found to be constitutional. Resp. at 38.

Finally, in response to Oklahoma's contention that HB 4156 must stand because it has not been shown to be unconstitutional in all its applications, Plaintiffs argue that Oklahoma "identifies no valid applications, and there are none." Resp. at 41. But the burden is on Plaintiffs, not Oklahoma. *See Moody v. NetChoice*, 603 U.S. 707, 723 (2024) ("'[A] plaintiff cannot succeed on a facial challenge unless he 'establish[es] that no set of circumstances exists under which the [law] would be valid ….'" (citation omitted)). And regardless, numerous scenarios exist where HB 4156's application would be constitutional: (1) federal officials arrested the illegal alien; (2) the State is already prosecuting the alien for a crime like rape or murder; (3) the State receives federal approval before prosecuting, or approval from the relevant foreign sovereign; (4) enforcement occurs under a Section 287(g) agreement. And so on. Where is the conflict in such cases, even under Plaintiffs' theories? It does not exist.

## IV.  THIS COURT SHOULD NOT SHIELD LAWBREAKING VIA PSEUDONYM.

Plaintiffs insist time and again that "[i]mmigration is federal business." Resp. at 38. But when arguing for anonymity, Plaintiffs make an about-face and complain that they "may face retaliation from the federal government for participating in this case." *Id.* at 44. Only the federal government can discretionarily enforce immigration law, we are told, but if the federal government exercises its discretion and enforces that law

against Plaintiffs, it would be inappropriate. This reveals Plaintiffs' true motivation, which is not to support federal discretion and prerogatives. Quite the opposite.

The fact of the matter is, Plaintiffs seek pseudonym status because if they had to reveal their names, it would increase the chances of their being deported or punished for violating federal law. But that's not retaliation, as Plaintiffs claim; it is merely the rule of law. Their actions are prohibited by federal law, and yet they have charged into federal court demanding that a law enacted by a sovereign state be enjoined because of its alleged conflict with the very federal laws they are violating. If you walk into a police station and admit to a crime, it does tend to increase the chances that you will be arrested for that crime. Same here: If you walk into a federal court and admit a federal crime, it is not retaliatory for the federal government to act. In a country where the rule of law is supposed to be sacrosanct, this should be expected.

The district court, however, found that having Plaintiffs "litigate this matter under their real names"—as required by the Rules of Civil Procedure and deeply rooted American legal tradition—would "effectively place a target on their backs." J.A. 198, 311. Respectfully, it is Plaintiffs' lawbreaking that placed that target on their backs.

Although the district court granted pseudonymity to Plaintiffs based only on its erroneous finding that the disclosure of their immigration status "falls neatly within the category of 'matters of a highly sensitive and personal nature,'" J.A. 311–12, Plaintiffs spend much time baselessly speculating about the risk of physical harm from state and private actors. Resp. at 44–46. Meanwhile, they obscure that it is their illegal entry—

and not the subsequent "revealing [of] someone's immigration status"—that invites criminal prosecution. *Id.* at 47. Again, Plaintiffs have confused retaliation with enforcement of the law. Plaintiffs, that is, "admit their violation of federal law, and then ask this Court to allow them to file suit *anonymously,* so as to avoid detection by the federal law enforcement agencies tasked with investigating immigration violations." *Henry*, 2007 WL 4390650, at *9. The district court's acquiescence here turned the federal courts into a willing "vehicle for [Plaintiffs'] continued unlawful presence in this country." *Id.* This Court should correct that serious and "unpalatable" error. *Id.*

## V.  THIS COURT SHOULD NOT PERMIT A CLASS OF FEDERAL LAWBREAKERS.

Class actions depart from the "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). Here, what unifies Plaintiffs' two classes is an ongoing violation of federal law. This is improper. Plaintiffs have proposed classes of admitted federal lawbreakers who are not challenging the federal law they are breaking. That is to say, "entry into the class is itself a crime." *Plyler*, 457 U.S. at 219 n.19. Because of this, *Plyler* "reject[ed] the claim that 'illegal aliens' are a 'suspect class'" for equal protection purposes. *Id.* Likewise, this Court should reject Plaintiffs' classes under Rule 23.

Plaintiffs have formulated their lawbreaking classes to circumvent the Supreme Court's recent proscription against universal injunctions in *Trump v. CASA*, 606 U.S. 831, 843 (2025) ("[W]e [have] consistently rebuffed requests for relief that extended beyond the parties."). Although a class action is a "proper procedural vehicle" when

23

Rule 23 is satisfied, Resp. at 50 n.11, certifying huge classes of lawbreakers is not what Congress intended, and Plaintiffs come nowhere near establishing a "properly conducted class action." *CASA*, 606 U.S. at 849 (quotation omitted).

A class action is a "powerful tool." *Id.* at 867 (Alito, J., concurring). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted). That is, Rule 23 embodies more than "a mere pleading standard." *Id.* at 350; *see also CASA*, 606 U.S. at 868 (Alito, J., concurring) (cautioning courts against granting class certification "without scrupulous adherence to the rigors of Rule 23" and noting that "[l]ax enforcement … would create a potentially significant loophole"). "Federal courts should thus be vigilant against such potential abuses of these tools." *CASA*, 606 U.S. at 868 (Alito, J., concurring). The district court was not vigilant when it provisionally granted class certification to two classes of federal lawbreakers—it was credulous. This was error.

## CONCLUSION

This Court should reverse and vacate the preliminary injunction.

Respectfully submitted,

*s/Garry M. Gaskins, II*

GARRY M. GASKINS, II
  *Solicitor General*
ZACH WEST
  *Director of Special Litigation*
CULLEN D. SWEENEY
  *Assistant Solicitor General*
OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
Cullen.Sweeney@oag.ok.gov
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Garamond, 14-point) using Microsoft Word 2016. The document complies with the type-volume limitation of Fed. R. App. P. 32, because it contains 6,490 words, excluding the parts exempted.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made as required by 10th Cir. R. 25.5 and the ECF Manual. Additionally, this filing was scanned with the most updated Crowdstrike antivirus software.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II

## CERTIFICATE OF SERVICE

I certify that on December 3, 2025, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system. No paper copies are required pursuant to 10th Cir. R. 31.5.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II